**POLK AND SULLIVAN,
INC., Appellant,**

v.

**UNITED CITIES GAS COMPANY and
Marsh & McLennan, Inc., Appellees.**

Supreme Court of Tennessee,
at Nashville.

Dec. 4, 1989.
Petition for Rehearing Denied
Jan. 29, 1990.

Steven A. Riley, Bass, Berry & Sims, Nashville, for appellant.

Jack M. Irion, Bomar, Shofner, Irion & Rambo, Shelbyville, for appellee United Cities Gas Co.

Robert S. Patterson, Boult, Cummings, Conners & Berry, Nashville, for appellee Marsh & McLennan, Inc.

## OPINION

**DROWOTA, Chief Justice.**

Polk and Sullivan, Inc. brought this suit against United Cities Gas Company and Marsh & McLennan, Inc., alleging that United Cities Gas had refused to pay premiums and refused to pay a commission owed on insurance coverage obtained by Polk & Sullivan and that Marsh & McLennan procured the breach of the contract to pay these premiums and commissions. The Chancellor held (1) that United Cities Gas was required to pay a "pro rata" premium, not a "short rate" premium; (2) that United Cities Gas does not owe Polk & Sullivan a commission for procuring the one policy that was not cancelled; and (3) that the suit against Marsh & McLennan for procuring the breach of contract between Polk & Sullivan and United Cities Gas should be dismissed. The Court of Appeals affirmed in part and reversed in part. They agreed with the Chancellor that United Cities Gas was obligated to pay only a "pro rata" premium. However, they held that United Cities Gas owed Polk & Sullivan a commission, but only for 30 days, and that Marsh and McLennan was liable for inducing the breach of contract but only for the 30-day commission.

As to the first issue, whether United Cities Gas was required to pay a "pro rata" premium or a "short rate" premium, we hold as a matter of law that United Cities Gas owed a "short rate" premium. We further find that no commission is owed by the Defendant United Cities Gas and that there was no breach of contract induced by the Defendant Marsh & McLennan.

United Cities Gas is a corporation engaged in the distribution of natural and propane gas. Due to the nature of its business, the gas company requires extensive liability insurance coverage. The company's coverage consists of a general liability policy in the amount of $1,000,000.00 and layered umbrella coverage in an additional amount of $49,000,000.00. Layered coverage is obtained from a number of companies with one company being the primary carrier and the others providing umbrella policies in a specified order.

United Cities Gas had purchased its insurance from Polk and Sullivan on an annual basis every year for approximately fifteen years. In each of these years, several months before the existing annual insurance coverage expired, Polk and Sullivan would obtain quotes for replacement coverage from various insurance companies. If the coverage and price were acceptable to United Cities Gas, Polk and Sullivan would put the coverage in force and issue what is known in the industry as a "binder." Each binder expressly incorporated the terms and conditions of the underlying policy. If the policy could not be issued and delivered before the binder expired, Polk & Sullivan agreed to automatically reissue the binder until such time as the policy was issued and could be delivered.

Clyde Johnson was a Senior Vice-President and Secretary of United Cities Gas. One of his primary duties was the administration of all the insurance coverage of the company, including liability coverage, pension and profit sharing plans, medical and health insurance, etc. In January of 1985, Mr. Johnson called Polk and Sullivan to seek quotations for the renewal for the next year of the general liability insurance that expired on March 1, 1985. Plaintiff obtained underwriting information and sought quotations for insurance coverage for the period of March 1, 1985 to March 1, 1986. On February 15, 1985, Polk & Sullivan called United Cities Gas and quoted a figure of approximately $420,000.00 for $50,000,000.00 of coverage through seven insurance policies. Mr. Johnson felt the quote was high and informed Polk and Sullivan that he was going to talk to other brokers concerning getting a better price, and he did so. He immediately called Patrick J. Higgins at Marsh & McLennan, who had earlier solicited United Cities Gas's insurance business, without success. He told Mr. Higgins that he was not satisfied with the quote given him by Polk and Sullivan and asked for a quotation for the coverage. He provided Mr. Higgins with the necessary underwriting data, but did not tell him the cost of the premium as quoted by Polk and Sullivan.

On February 27, 1985, Mr. Higgins called Mr. Johnson and told him that he was unable to locate coverage for United Cities Gas. Along about that time, Polk and Sullivan again called Mr. Johnson and told him that the premium was going to be $419,-000.00 and that he would put the coverage into effect at 12:00 midnight on February 28th. According to Mr. Polk, of Polk & Sullivan, Mr. Johnson told him "bind it," meaning that he should issue a binder for the coverage, with the policies to be issued at a later date.

Plaintiff purchased the coverage effective March 1, 1985, for one year and issued binders to United Cities Gas as evidence of the policies that would be issued promptly thereafter. On March 7, 1985, plaintiff sent United Cities Gas the binders and invoices for the coverage purchased. Each binder incorporated by reference the terms, conditions and limitations of the policies which would be later issued by each company. Each policy provided the condition that if the insured cancelled prematurely, "earned premiums shall be computed in accordance with the customary short-rate table and procedure."

Each of the binders provided:

### Conditions

This Company binds the kind(s) of insurance stipulated on the reverse side. This insurance is subject to the terms, conditions and limitations of the policy(ies) in current use by the Company. This binder may be cancelled by the insured by surrender of this binder or by written notice to the Company stating when cancellation will be effective. This binder may be cancelled by the Company by notice to the Insured in accordance with the policy conditions. This binder is cancelled when replaced by a policy. If this binder is not replaced by a policy, the Company is entitled to charge a premium for the binder according to the Rules and Rates in use by the Company.

At United Cities Gas's request, on March 12, 1985, plaintiff issued insurance certificates to various third parties, including regulatory agencies, to evidence the fact that United Cities Gas had purchased insurance policies covering the period of March 1, 1985 to March 1, 1986.

In the meantime, Mr. Higgins at Marsh & McLennan continued to seek coverage for United Cities Gas at a lower cost. In March, he informed Mr. Johnson that he could obtain the required coverage for $357,000.00. Mr. Johnson purchased the coverage from Marsh & McLennan and on March 28, 1985, United Cities Gas informed Plaintiff that Defendant Marsh & McLennan had obtained insurance coverage for lower premiums, therefore, they were cancelling as of April 1, 1985. All of the coverage was cancelled by Polk and Sullivan except the policy with California Union Insurance Company, which remained in effect and continued to provide the second layer of umbrella coverage.

On March 28, 1985, Mr. Johnson mailed Polk and Sullivan a check in the amount of $35,607.11, representing the pro rata premium due for the period March 1 through March 31, 1985, when the coverage was in effect under the binder. On April 1, 1985, Polk and Sullivan returned the check to United Cities Gas "since it was not issued for the correct short rate cancellation premium due." Mr. Polk also advised Mr. Johnson that as soon as the "short rate cancellation notices" were received from the various companies he would send the invoices on to United Cities. On June 13, 1985, he sent Mr. Johnson an invoice for $64,671.40. The difference between the short rates and the pro rata rates is $29,-064.29.

### I.

■ The first question presented is whether United Cities Gas was required under the terms of the binder to pay a "pro rata" premium, or whether the "short rate" premium applied. Polk and Sullivan contends that the short rate premium is applicable, and United Cities contends that the amount of the premium should be pro rated, i.e., one-twelfth of the annual premium. Correspondence continued to pass between Mr. Polk and Mr. Johnson until January 22, 1986, when Polk and Sullivan ac-

cepted United Cities Gas's check in the amount of $35,607.11, with the stipulation that they still expected to receive the balance due. United Cities Gas has not paid that amount, and this lawsuit ensued.

At the time United Cities Gas informed Plaintiff that they were cancelling as of April 1, 1985, Plaintiff reminded United Cities Gas about the short rate penalty. United Cities Gas replied that they understood the short rate could be waived. Plaintiff then promised to request that the short rate be waived. Plaintiff requested cancellation of all coverage at "pro rata" premium with waiver of the short rate charges. The waiver was refused. It is uncontroverted that Polk and Sullivan paid to the furnishers of insurance the short rate premium for the 30–day binders. All coverage was cancelled except for one policy which was continued in force at the request of Defendant Marsh & McLennan because they could not obtain substitute coverage cheaper. The premium due on this 30–day binder was merged into the annual premium which was paid to Marsh & McLennan by United Cities Gas.

As stated earlier in this opinion, each binder incorporated by reference the terms, conditions and limitations of the policies which would be later issued by each company. Each policy provided the condition that if the insured cancelled prematurely "earned premiums shall be computed in accordance with the customary short-rate table and procedure." United Cities Gas, by cancelling the binders, cancelled its annual coverage and therefore is liable for the short rate premium in accordance with the cancellation provisions of the insurance policies. There is no evidence that the binders which issued were based on an agreement that they were issued for the sole purpose of temporary insurance to allow United Cities Gas an opportunity to purchase other insurance. Even though United Cities Gas was going to continue its search for cheaper insurance, it, nonetheless, purchased insurance evidenced by the binders. We find as a matter of law that United Cities Gas is obligated to pay the short rate premiums required by the conditions in each cancelled policy which

were explicitly incorporated by reference by each binder.

## II.

■ In the second issue Polk and Sullivan contends that the Chancellor erred by finding that United Cities Gas does not owe them a commission for procuring the one policy that was not cancelled.

As previously noted, one of the policies obtained by Polk and Sullivan was with California Union Insurance Company. This coverage was not cancelled, but the policy was delivered to United Cities by Marsh & McLennan. By a cover letter with the invoice for $64,671.40 for the one month premium under the binder, Polk and Sullivan advised United Cities as follows:

> As you will note, there is no billing for the Cal Union Policy # ZCX007997 which provided Umbrella coverage for $15,000,-000 excess of $5,000,000. There is quite a bit of confusion regarding the agent of record letter effective date, etc., and this will have to be handled as soon as we get the word from the broker.

Thus, it appears that Polk and Sullivan did not even seek payment for that premium or any commission on that policy until some time later.

The Chancellor found in favor of United Cities Gas upon this portion of Polk and Sullivan's claim, finding that an insurance broker is the agent of the insurance carrier and not the insured, and questions concerning commissions are to be settled between the broker and the insurance carrier. The Chancellor relied on T.C.A. § 56–6–124, which then provided that every agent "who solicits or negotiates an application for insurance of any kind shall, in any controversy arising from the application for insurance or any policy issued in connection therewith" "be regarded as the agent of the insurer and not the insured...." The Court of Appeals held that United Cities Gas owes Polk and Sullivan the profit they would have realized for the first thirty days the coverage with California Union

was in effect.[1]

As the Chancellor noted, any suit for the commission must be against the insurance carrier. United Cities Gas has paid the premium on the California Union policy in the amount of $59,625.00. The gas company is under no obligation to pay any more than the contract of insurance provides, and Polk and Sullivan must look to California Union if they are dissatisfied with the commission that they have received. The judgment of the Court of Appeals is reversed and the judgment of the trial court in regard to this issue is reinstated.

### III.

In the final issue Polk and Sullivan contends that the Chancellor erred in dismissing its suit against Marsh & McLennan for procuring the breach of contract between Polk and Sullivan and United Cities Gas. The Court of Appeals concurred in part, finding that there was no contract between United Cities Gas and Polk and Sullivan for the furnishing of a full year of insurance coverage. Since there was no contract, Marsh & McLennan could not be liable for inducing the breach of a nonexistent contract.

However, as to the California Union Insurance Company binder, the Court of Appeals found that United Cities Gas had a contractual obligation to pay Polk and Sullivan the pro rata premium for the thirty day binder and when they did not do so, the gas company breached its contract with Polk and Sullivan. The Court of Appeals found that Marsh & McLennan induced United Cities Gas to breach its contract with Polk and Sullivan by "taking over" the California Union coverage, billing United Cities Gas for the full year, including the term covered during the thirty day binder period, accepting payment of the full amount from United Cities Gas, retaining the commission on the full amount and

remitting the net premium to California Union or its broker. The Court of Appeals found that Marsh & McLennan "willing (sic) and knowingly caused the business of Polk (the thirty day binder) to be diverted from Polk and channeled through Marsh to the benefit of Marsh and the detriment of Polk." The Court of Appeals found that the business so diverted represented insurance coverage which had already been "furnished and expired," "leaving only payment therefor to complete the transaction." "Payment was never made due to the intervention of Marsh, who reaped the benefit of the intervention." The Court of Appeals continued by finding, "No more classic example of unlawful interference with contract could be imagined than the action of knowing collection for services rendered by another and the resultant prevention of collection by the lawful owner of the debt."

Polk and Sullivan contends that Marsh & McLennan "acted maliciously" to induce United Cities Gas to breach its contract with Polk and Sullivan. The Chancellor did not even reach this issue, because he found there had been no breach of contract by United Cities Gas.

■ Tennessee law recognizes both a common law action and a statutory action for unlawful inducement of a breach of contract. T.C.A. § 47–50–109, *Edwards v. Travelers Insurance of Hartford, Connecticut,* 563 F.2d 105, 119 (6th Cir.1977), citing numerous cases from this Court and the Court of Appeals. T.C.A. § 47–50–109 is but a statutory declaration of the common law tort action, expressly substituting treble damages for punitive damages. *Emmco Insurance Company v. Beacon Mutual Indemnity Company,* 204 Tenn. 540, 322 S.W.2d 226, 231 (1959). The statute provides for mandatory treble damages in the event there is a "clear showing" that the defendant induced the breach. *Continental Motel Brokers, Inc. v. Blanken-*

---

1. The Court of Appeals recognized that United Cities Gas does not owe Polk and Sullivan "a *commission* as such." (Emphasis in Court of Appeals opinion.) However, the Court went on to hold that Polk and Sullivan is entitled to charge United Cities Gas for the "full pro rata premium" for thirty days under the California Union policy even though the full annual premium under the policy has already been paid through Marsh & McLennan. The case was remanded to the trial court for a determination of the exact amount due Polk and Sullivan by United Cities Gas.

*ship,* 739 F.2d 226, 229 (6th Cir.1984). In order to recover for procurement of a breach of contract the plaintiff must prove that there was a legal contract, of which the wrongdoer was aware, that he maliciously intended to induce a breach, and there must have been a breach, proximately caused by his acts, resulting in damages. *Dynamic Motel Management, Inc. v. Erwin,* 528 S.W.2d 819, 822 (Tenn.App.1975).

In this case it is clear that United Cities Gas was displeased with Polk and Sullivan's quotation of the price of their insurance coverage from the time that the quotation was given. United Cities Gas made Polk and Sullivan aware of this dissatisfaction from the start and made it clear that the gas company would be seeking less expensive coverage. United Cities Gas contacted Marsh & McLennan, a broker that had unsuccessfully solicited their business in the past, and obtained identical coverage at a lower cost. United Cities Gas accepted the coverage at the price quoted by Marsh & McLennan and cancelled the binder with Polk and Sullivan. This is not a "classic example of unlawful interference with contract," as the Court of Appeals termed Marsh & McLennan's action. This is a classic example of the free enterprise system at work. United Cities Gas would have been unwise to have paid insurance premiums that were over $77,000.00 higher than necessary. The company obtained a better price and paid it. That was just good business judgment. As the Sixth Circuit recently stated in *Warde v. Kaiser,* 887 F.2d 97 (6th Cir.1989) citing *Prosser and Keeton on Torts* (5th ed. 1984) " '[t]he policy of the common law has always been in favor of free competition, *id.* at 1012,' Prosser and Keeton say there is 'no doubt' that a competitor **may** interfere for the purpose of acquiring the business for himself:

'Where the contract interfered with is terminable at will ... the privilege of competition has been recognized. In such a case there is no contract right to have the relation continued, but only an expectancy, which is similar to the expectancy of a business that a customer will continue to do business with it.

With such an expectancy of future relations, and prospective advantage, there has been no doubt that a competitor has the privilege of interfering to acquire the business for himself.' (Emphasis supplied.)

*Id.* at 987. Similarly, § 768(1) of the Restatement has this to say on the subject:

'One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if

(a) the relation concerns a matter involved in the competition between the actor and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue an unlawful restraint of trade and

(d) his purpose is at least in part to advance his interest in competing with the other.' "

As this Court recognized in *Hutton v. Watters,* 132 Tenn. 527, 179 S.W. 134, 135 (1915):

Every one has the right to establish and conduct a lawful business, and is entitled to the protection of organized society, through its courts, whenever that right is unlawfully invaded. Such right existing, the commission of an actionable wrong is established against any one who is shown to have intentionally interfered with it, without justifiable cause or excuse. To establish justification, it must be made to appear, not only that the act complained of was otherwise lawful and performed in a lawful manner, but likewise that it had some real tendency to effect a reasonable advantage to the doer of it. But in order to determine the reasonableness of such act it must be considered from the standpoint of both parties, with a view to ascertaining whether the defendant has acted merely in the due exercise of his own right to carry on business for himself. If this be found in his favor, while he may have

done the plaintiff harm, he cannot be adjudged to have done an injury in the legal sense; that is, a wrongful act in violation of the legal right of another.

It is clear that there was no breach of contract induced by Marsh & McLennan, and the judgment of the Court of Appeals finding that Marsh & McLennan induced the gas company to breach its contract with Polk and Sullivan is reversed. Indeed, Polk and Sullivan did not even invoice United Cities Gas for the California Union premium in view of the fact that there was a change of brokers, but a continuation of coverage. From the beginning Polk and Sullivan obviously recognized that the collection of their commission would be a matter to be settled with California Union.

The judgment of the Court of Appeals is reversed and the judgment of the Chancellor is reversed as to issue one and affirmed as to issues two and three. The costs shall be taxed equally between Appellant and Appellee United Cities Gas Company.

FONES, HARBISON and O'BRIEN, JJ., and SCOTT, Special Justice, concur.

## ON PETITION FOR REHEARING

PER CURIAM.

Polk and Sullivan, Inc., have timely filed a Petition for Rehearing asking this Court to determine whether pre-judgment interest should be awarded in this action, pointing out that this Court did not address that issue in our opinion filed December 4, 1989.

Upon consideration of the Petition, we are of the opinion that the Petition should be granted and our judgment is accordingly modified to allow pre-judgment interest.

Polk and Sullivan, Inc., brought this breach of contract action against United Cities Gas Company seeking premiums due on insurance coverage obtained by Polk and Sullivan and pre-judgment interest on that amount. The amount of the premium in dispute was stipulated to be $29,064.29. Payment was due on July 15, 1985. Polk and Sullivan is accordingly awarded pre-judgment interest from July 15, 1985, at the prime rate for that period, however, "not in excess of a maximum effective rate of ten percent (10%) per annum" in accordance with T.C.A. § 47-14-123.