**Tom WINFREE, Plaintiff–Counter–Defendant–Appellant,**

v.

**EDUCATORS CREDIT UNION and Credit Union Services Organization of Middle Tennessee, Inc., Defendant–Counter–Plaintiff–Appellees.**

Court of Appeals of Tennessee, Western Section, at Nashville.

Jan. 6, 1995.

Application for Permission to Appeal Denied by Supreme Court May 1, 1995.

---

James C. Hofstetter, Fred E. Cowden, Nashville, for appellant.

Ernest D. Bennett, Nashville, for appellees.

CRAWFORD, Judge.

Plaintiff, Tom Winfree, filed a complaint against Educators Credit Union (hereinafter ECU) and its wholly-owned subsidiary, Credit Union Services Organization of Middle Tennessee, Inc. (hereinafter CUSO), for lost insurance commissions resulting from defendants' breach of contract, unfair competition, and tortious interference with contract.[1] The Chancery Court for Davidson County denied plaintiff's motion for partial summary judgment, granted defendants' motion for summary judgment, and dismissed the case.

The facts are undisputed. In 1986, plaintiff entered into a "Memorandum of Understanding" with ECU in which he agreed to act as an unpaid marketing representative for ECU in consideration for the opportunity to sell cancer insurance from Life Investors, Inc., (hereinafter Life Investors) to ECU's members. Prior to this agreement, ECU had promoted cancer insurance offered by Loyal American to its members. The memorandum acknowledged that plaintiff was a representative of Life Investors and not an employee of ECU. Plaintiff was required to undergo training by ECU and contact new employers for membership in the credit union. ECU members desiring to purchase the insurance could enroll with plaintiff, and ECU would deduct the premiums from their salaries. At the same time, ECU would temporarily continue promoting insurance for Loyal American.

In March, 1987, the parties modified their agreement in an "Addendum to Memorandum of Understanding" which reflected that ECU would no longer promote the Loyal American cancer plan. The addendum also allowed ECU to cancel the entire agreement with plaintiff by giving thirty days written notice to Life Investors "and/or Mr. Tom Winfree."

In 1989, plaintiff and ECU agreed that plaintiff could market a "money-back" cancer insurance offered by Capital America Life Insurance Company (hereinafter Capital Life) as well as the Life Investors plan. On October 20, 1989, ECU sent a letter to its members advising of the availability of the new plan.

In January, 1990, Sarah Wood became President of ECU and began to inquire about the formation of a credit union service organization for ECU. In August, 1990, Mrs. Wood requested that plaintiff not enroll any new insurance buyers on the payroll deduction plan; instead, new buyers would have to pay plaintiff directly. On August 15, the ECU Board of Directors approved the creation of a credit union service organization. CUSO was chartered on October 1, 1990 and incorporated on November 28. ECU's goal in forming CUSO was to continue offering insurance to its members while retaining the sales commissions which plaintiff had been collecting. To this end, CUSO entered into an agent's contract with Commonwealth National Life Insurance Company (hereinafter Commonwealth) on November 27, 1990, to sell insurance to ECU members.

On December 31, 1990, ECU sent written notice to Life Investors and Capital Life that the payroll deduction arrangement would be

1. Defendants filed a counterclaim which the trial court dismissed and which is not at issue on

terminated on February 1, 1991.[2] On January 2, 1991, Mrs. Wood sent a letter to each member on the insurance payroll deduction plan announcing the formation of CUSO and the termination of the payroll plan for insurance sold by plaintiff. The letter advised that members could stay on the payroll deduction plan only if they bought Commonwealth insurance. Members who wished to continue paying premiums directly from payroll were required to sign a conversion form enclosed with the letter by January 25, 1991.

Plaintiff learned of the CUSO plan on January 4, 1991. He claims that "a substantial number" of his policyholders converted to the Commonwealth plan before his 30 days notice expired on February 1. He further claims that this deprived him of present and future commissions from the premiums of existing policyholders. Before trial, he moved for partial summary judgment on the issue of defendants' liability. Defendants also moved for summary judgment, and, after a hearing on the motions, the trial court denied plaintiff's motion. After a second motion hearing, the trial court granted summary judgment to defendants and dismissed the complaint.

Count I of the complaint avers that ECU mislead its members into thinking that the Commonwealth plan would cost less because it stated that "commissions are retained" by CUSO. Plaintiff avers that the January 2 letter and January 25 deadline for policy conversion constituted improper competition with him while the Memorandum of Understanding was still in effect. This competition was a material breach of the memorandum which caused him to lose commissions on premiums to be paid by existing policyholders.

Each subsequent count incorporates the allegations of Count I and all other preceding counts. Count II avers that ECU's actions violated the implied covenant of good faith and fair dealing in the memorandum agreement. Count III avers that ECU's actions "constituted a violation of the covenant in every contract that neither party will do

anything that will deprive the other of the fruits of his bargain. Said defendant's actions constituted unfair competition." Counts IV and V aver that defendants induced a breach of contract by its members in violation of T.C.A. § 47–50–109 (1988) and the common law of torts, respectively. Count VI avers that defendants improperly interfered with the "existing and prospective" contracts between ECU members and the insurance companies plaintiff represented. He also avers that defendants improperly interfered with his right to collect commissions on those contracts. On appeal, plaintiff contends that the trial court erred in granting summary judgment to defendants and in denying his motion for partial summary judgment.

■ A trial court should grant a motion for summary judgment when the movant demonstrates that there are no genuine issues of material fact, and that the moving party is entitled to a judgment as a matter of law. Tenn.R.Civ.P. 56.03. The phrase "genuine issue" as stated in Rule 56.03 refers to genuine factual issues, and does not include issues involving legal conclusions to be drawn from the facts. *Byrd v. Hall,* 847 S.W.2d 208, 211 (Tenn.1993). Because the facts are undisputed here, we agree that granting summary judgment to one of the parties was proper. Therefore, we must decide whether the legal conclusions on which the trial court's grant of summary judgment was based are correct. Our review is *de novo* on the record with no presumption of the correctness of the trial court's conclusions of law. *Union Planters Nat'l Bank v. American Home Assurance Co.,* 865 S.W.2d 907, 912 (Tenn.App.1993).

■ In his first issue on appeal, plaintiff asserts that ECU breached its "contractual obligation of good faith and fair dealing" in the performance of its duties of the understanding with plaintiff. Accordingly, we address the propriety of granting summary judgment to defendants on counts I through III of the complaint, which comprise plain-

appeal.

2. Plaintiff concedes that these letters served as the required 30–day written notice of the termination of ECU's contract with plaintiff.

tiff's claim for breach of contract in the trial court.

■■■■ "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Covington v. Robinson*, 723 S.W.2d 643, 645 (Tenn. App.1986) (citing Restatement (Second) of Contracts § 205 (1979); 17 Am.Jur.2d *Contracts* § 256 (1964)); *see also* 17A C.J.S. *Contracts* § 328 (1963). Section 256 of *American Jurisprudence, Second Edition,* on *Contracts,* further provides:

> [T]here is an implied undertaking in every contract on the part of each party that he will not intentionally or purposely do anything ... which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Ordinarily if one exacts a promise from another to perform an act, the law implies a counterpromise against arbitrary or unreasonable conduct on the part of the promisee. However, essential terms of a contract on which the minds of the parties have not met cannot be supplied by the implication of good faith and fair dealing. (footnotes omitted).

Defendants gave the notice required by the contract to cancel the agreement on December 31. Only two days later, however, they solicited all of plaintiff's policyholders to convert to the Commonwealth plan serviced by CUSO. ECU's letter required anyone wishing to remain on the payroll deduction plan to convert by January 25. Both the letter of solicitation and the deadline set therein fell within the contractual thirty day period. These actions were directly aimed at retaining insurance commissions, which had been accruing to plaintiff, for the benefit of ECU members. We do not quarrel with the proposition that ECU could, in good faith with its agreement, charter and form CUSO. But promoting CUSO while its contract with plaintiff was still in effect was completely contrary to the contract's intent, as evidenced in the memorandum.

■■■■ The cardinal rule for interpretation of contracts is to ascertain the intention of the parties from the contract as a whole and to give effect to that intention consistent with legal principles. *Bob Pearsall Motors v. Regal Chrysler–Plymouth*, 521 S.W.2d 578, 580 (Tenn.1975); *Union Planters, supra,* 865 S.W.2d at 912. Where there is no ambiguity, it is the duty of the court to apply to the words used their ordinary meaning and neither party is to be favored in their construction. *Brown v. Tennessee Auto. Ins. Co.,* 192 Tenn. 60, 63, 237 S.W.2d 553, 554 (1951); *Heyer–Jordan & Assocs. v. Jordan,* 801 S.W.2d 814, 821 (Tenn.App.1990). As noted earlier, the parties' agreement explicitly remained effective until thirty days after notice was given. The memorandum acknowledged that plaintiff was an insurance agent and would not receive compensation from ECU; his consideration was to be sales commissions paid by his insurance company. Therefore, defendants intentionally interfered with plaintiff's receipt of the *only* "fruit" of the contract which was intended for him.

■■■■ Defendants claim that plaintiff is asking the law to imply a right which he did not bargain for in the contract and which is contrary to public policy because it creates a restraint of trade. They claim that plaintiff is seeking to gain a "monopoly ... by ... preventing communications and competition *after* notice of termination" is given. We disagree.

We are not supplying any "essential term" to the contract, but simply requiring that ECU exercise good faith under the contract for the time of its express duration. Holding that ECU could promote CUSO's competing plan before expiration of the contract would completely ignore the notice provision. We will not ignore that provision, nor allow defendants to retain benefits acquired from acts committed in bad faith.

■■■■ Although disfavored by the law, restraints of trade, such as covenants not to compete, are valid and will be enforced provided they are deemed reasonable. *Heyer–Jordan,* 801 S.W.2d at 820. To the extent this Court is upholding a restraint of trade, the thirty day restriction is not unreasonable and we are not inclined to do away with it on public policy grounds. The grant of summary judgment to defendants on the breach of contract claim is reversed, as is the denial

of plaintiff's motion for partial summary judgment.

Plaintiff also questions whether the chancellor erred in granting summary judgment on his claims of tortious interference with contract. We find that Counts IV and V, for improper procurement of a breach of contract under both the common law and the Tennessee Code, are unfounded. A fundamental requirement in sustaining an action for procurement of the breach of a contract is an actual breach. *Polk & Sullivan, Inc. v. United Cities Gas Co.,* 783 S.W.2d 538, 543 (Tenn.1989); *Campbell v. Matlock,* 749 S.W.2d 748, 751 (Tenn.App.1987). As defendants note in their brief, plaintiff has not established such a breach in the record nor has plaintiff contested defendants' assertion that the policies were terminable at will. There is no indication that the policyholders terminated their coverage wrongly. Therefore, we are left to determine whether a claim lies in tort for any interference which did occur.

It is the general rule in Tennessee that an insurance agent has no standing to maintain a tort action against a competing agent for lost business, even where a breach of contract is proven. *Willard v. Claborn,* 220 Tenn. 501, 506, 419 S.W.2d 168, 170 (1967). Plaintiff attempts to distinguish the rule of standing in this case. Rather than discuss his lengthy argument on this matter, we will discuss the ruling in *Polk, supra,* where an insurance broker lured a client away from another broker with a lower premium. The Tennessee Supreme Court, speaking through then Chief Justice Drowota, stated that:

> Where the contract interfered with is terminable at will ... the privilege of competition has been recognized. In such a case there is no contract right to have the relation continued, but only an expectancy, which is similar to the expectancy of a business that a customer will continue to do business with it. **With such an expectancy of future relations, and prospective advantage, there has been no doubt that a competitor has the privilege of interfering to acquire the business for himself.** ... One who intentionally causes

a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if

> (a) the relation concerns a matter involved in the competition between the actor and the other and
>
> (b) the actor does not employ wrongful means and
>
> (c) his action does not create or continue an unlawful restraint of trade and
>
> (d) his purpose is at least in part to advance his interest in competing with the other.

783 S.W.2d at 543 (quoting *Warde v. Kaiser,* 887 F.2d 97, 102 (6th Cir.1989)). The Court held that the broker procuring new insurance for the client had not unlawfully interfered with the former broker whose contract with the client had been terminable at will. *Id.* at 544.

In the case at bar, CUSO is an entity specifically created to sell insurance to ECU members. Defendants (ECU as CUSO's owner) and plaintiff are directly competing for insurance commissions as the brokers competed in *Polk.* Their actions causing members to terminate contracts with plaintiff's insurance companies were entirely proper. As in *Polk,* we cannot say that this competition constitutes unlawful interference, but find that it is "a classic example of the free enterprise system at work." *Id.* at 543. Further, as the Sixth Circuit found in *Warde,* it appears that the law in Tennessee requires a breach in any action for unlawful interference. *Warde,* 887 F.2d at 103 n. 1 (citing *Cesnik v. Chrysler Corp.,* 490 F.Supp. 859, 874 (M.D.Tenn.1980), and *Taylor v. Nashville Banner Pub. Co.,* 573 S.W.2d 476, 485 (Tenn.App.1978), *cert. denied,* 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979)). Since none has been shown, we affirm the grant of summary judgment to defendants on this issue.

Accordingly, the order of the trial court granting summary judgment to defendants is reversed as to the claim for contractual breach of good faith and affirmed as to all

other issues. The trial court's order denying partial summary judgment is reversed and partial summary judgment on the issue of liability for breach of contractual good faith is granted to plaintiff. The case is remanded for a determination consistent with this opinion of the amount of plaintiff's damages resulting from defendants' breach. Costs of the appeal are assessed equally against plaintiff and defendants.

TOMLIN, P.J., (W.S.), and FARMER, J., concur.