IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE
_____

**ALFREDO SHAHRDAR,**

    Plaintiff-Appellee,

                          Davidson Circuit No. 94C-255

Vs.                            C.A. No. 01A01-9710-CV-00553

**GLOBAL HOUSING, INC., and
MOHAMMED SHARIFPOUR,**

    Defendants-Appellants.

_____

FROM THE DAVIDSON COUNTY CIRCUIT COURT
THE HONORABLE MARIETTA M. SHIPLEY, JUDGE

Douglas S. Johnston, Jr.; Barrett, Johnston & Parsley of Nashville
For Appellee

Thomas I. Bottorff; Bottorff, Kavin & Cook of Brentwood
For Appellants

*AFFIRMED IN PART, REVERSED IN PART AND REMANDED*

Opinion filed:



**FILED**

**May 20, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

**W. FRANK CRAWFORD**,
**PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**DAVID R. FARMER, JUDGE**

This case involves the alleged breach of an oral employment contract and the inducement of that breach by a third party. Defendants Global Housing, Inc. and Mohammed Sharifpour appeal the order of the trial court granting the plaintiff Alfredo Shahrdar a default judgment and

also the jury's award of damages. Plaintiff Alfredo Shahrdar assigns error to the trial court's refusal to send the issue of punitive damages to the jury, as well as the $205,009 remittitur suggested by the court.

Defendant Global Housing, Inc. (Global) owns and operates a Holiday Inn hotel and a Howard Johnson's hotel in Nashville, Tennessee. Global is a corporation headquartered in Georgia and owned by brothers Javad and Jalal Sharifpour. Plaintiff Alfredo Shahrdar alleges that while living in Reno, Nevada, he was recruited by defendant Mohammed Sharifpour (Sharifpour), on behalf of Global, to move with his family to Nashville and take over management of Global's hotel properties. Mohammed Sharifpour is not officially connected with Global, which is owned by his two sons, but it is apparent that he has some involvement with, or at least influence over, the activities of the corporation. The complaint alleges that "plaintiff was to be a permanent employee, paid at the rate of $65,000 per year, plus bonus, benefits, lodging, food and transportation, and was to be paid his expenses in moving himself and his family." In the alternative, the complaint alleges that "plaintiff was hired as a temporary employee as general manager of the two properties and was to be paid at the rate of $1,800 per week, plus the above stated benefits."

Plaintiff alleges that he moved with his family to Nashville and took over management of one of the hotel properties on July 1, 1993, but that he was never paid by Global for his services. He received two $2,500 "advances" for expenses, but despite repeated requests and assurances was never placed on Global's payroll. After working for approximately five months without pay, plaintiff was forced to quit on December 8, 1993. The complaint further alleges that "[i]n addition, defendants have refused to acknowledge plaintiff's employment at all, causing plaintiff's reputation within the travel services community to be damaged, and preventing him from obtaining other employment."

Plaintiff's suit against Global asserts theories of breach of contract, intentional and/or negligent misrepresentation, promissory fraud, and intentional and/or negligent infliction of emotional distress. Plaintiff seeks treble damages from Sharifpour individually for inducement of breach of contract in violation of T.C.A. § 47-50-109. Plaintiff alleges that Sharifpour had instructed Behzad Compani, another Global employee, not to pay plaintiff, and that he later

2

instructed his sons to deny that plaintiff was ever employed by Global.

A substantial portion of the nearly 500 pages in the Technical Record chronicles plaintiff's year and a half long battle to receive adequate responses to his discovery requests. Defendants' responses to interrogatories and requests for production of documents were slow in coming, generally inadequate, and contained what the plaintiff described as "boilerplate objections," despite various orders of the court to compel compliance. As a result, plaintiff was forced to file several different motions to compel discovery and for sanctions. Plaintiff moved for partial summary judgment on the issue of whether plaintiff was an employee of Global for the time period in question. The motion was granted by the trial court based upon the affidavit of Behzad Compani, a former employee of Global, and the deposition testimony of Javad Sharifpour in which he admitted that plaintiff had been an employee.

On June 30, 1995, approximately seventeen months after litigation began, plaintiff moved for a default judgment due to the defendants' failure to comply with discovery orders. The trial court granted plaintiff a default judgment for breach of contract, intentional misrepresentation and promissory fraud, and set the matter for a jury trial on the issue of damages only. On the day set for the damages hearing, and over four months after entry of the default judgment, defendants moved to set aside the default judgment and continue the hearing. Both motions were denied. The jury awarded plaintiff $45,000 in damages. Defendants moved for a new trial asserting (1) that the verdict was contrary to the weight of the evidence, (2) that it was error for the court to exclude defendants' evidence of telephone and restaurant charges incurred by plaintiff that should be set off against any award to plaintiff, (3) that the court erred in refusing to set aside the default judgment, and (4) that the court erred in instructing the jury that damages were recoverable for intentional misrepresentation.

The plaintiff also moved for a new trial asserting, *inter alia*, (1) that the court erred in ruling that the allegations of the complaint did not support claims of procurement of breach of contract, defamation, and intentional infliction of emotional distress, (2) the court erred in failing to allow evidence of economic losses suffered by the plaintiff after December 8, 1993, and (3) that it was error to keep the issue of punitive damages from the jury. The court granted both motions and a second trial was held on December 3, 1996.

The jury awarded damages against Global for breach of contract in the amount of $40,403. The jury also assessed damages against both Global and Mohammed Sharifpour, jointly and severally, for intentional misrepresentation and promissory fraud in the amount of $270,009. This amount was based on expert testimony presented by plaintiff for damages incurred for the three year period between trial and plaintiff's last day of employment with Global, December 8, 1993. In addition, the jury awarded plaintiff treble damages against Sharifpour for inducement of breach of contract pursuant to T.C.A. § 47-50-109, with Global and Sharifpour jointly and severally liable for the first $40,403. The total damages award in favor of plaintiff equaled $391,218. Upon defendants' motion for a new trial, the court, acting as thirteenth juror, suggested a remittitur of $205,009 on the award for misrepresentation and fraud. In making this suggestion, the court stated "the award of two hundred seventy thousand nine dollars ($270,009.00) in addition to the other damages is too speculative and evidences passion and caprice on the part of the jury." The resulting award for fraud and misrepresentation is $65,000, or one additional year's salary. The plaintiff accepted, under protest, the court's suggestion of remittitur.

The defendants appeal the judgment of the trial court and present the following issues for review:

> 1. The trial Court erred in failing to set aside a partial summary judgment finding that Plaintiff was an "employee" of Defendant Global Housing, Inc.
>
> 2. The trial Court erred in granting and then failing to set aside a Default Judgment in favor of the Plaintiff and against the Defendants for ostensibly not responding to Plaintiff's discovery.
>
> 3. The trial Court erred in sustaining a jury verdict for damages which are contrary to the law and the Court's charge and exceeded the Benefit of the Bargain Rule.
>
> 4. There is no material evidence to support a jury verdict awarding damages against Defendant Mohammed Sharifpour for inducement of breach of the Plaintiff's oral employment agreement with Defendant Global Housing, Inc.
>
> 5. The trial court erred in granting Plaintiff discretionary costs.

The plaintiff raises the following additional issues on appeal:

> 1. The court erred in suggesting a remittitur of $205,009 on the misrepresentation claim.

4

2. The court erred in failing to send the issue of punitive damages
to the jury.

## 1. PARTIAL SUMMARY JUDGMENT

We will address these issues in order, beginning with the grant of partial summary judgment finding that plaintiff was an employee of Global. A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

The parties have been involved in a battle of semantics over the term "employee." Plaintiff argues simply that he worked for Global for five months as manager of one of its hotels and that the defendants have wrongly taken the position that he was never employed there at all. In defendants' brief to this Court, defendants take issue with what they perceive as contradictory allegations that plaintiff has made regarding who hired him, for what rate of pay, and whether

he was an employee or independent contractor. However, plaintiff is simply seeking compensation for his services, and for damages that he has incurred due to defendants' refusal to acknowledge that he ever worked on behalf of Global. There is no issue involved, other than rate of pay, that would require making a distinction between an employee and an independent contractor. For purposes of ruling on the motion for partial summary judgment, the identity of the particular individual who hired plaintiff, his rate of pay, and whether plaintiff was an "employee" in the technical sense or merely an independent contractor, are not relevant. If plaintiff can show that there is no genuine issue of material fact as to whether he was in fact hired by someone at Global, or on Global's behalf, and as to whether plaintiff actually worked managing one of Global's hotels or not, then summary judgment is proper.

In support of his motion for partial summary judgment, plaintiff presented the testimony of Javad Sharifpour, the president of Global, wherein he admitted that plaintiff was working and "running things" at the hotel. Plaintiff also filed the affidavit of Behzad Compani, Global's former Chief Financial and Administrative Officer, who stated that the plaintiff was hired to manage one of Global's hotels. Defendants' filed a cursory response to plaintiff's motion which stated simply: "Defendants aver that there are numerous genuine issues of fact that make disposition of this case by summary judgment improper." We hold that defendants have not met their burden of producing specific facts in response to plaintiff's motion that would show that there is a genuine issue of material fact for trial. The grant of partial summary judgment that plaintiff was an employee of Global is affirmed.

## 2. DEFAULT JUDGMENT

Defendants assert that the default judgment was improperly granted because: (1) defendants timely responded to plaintiff's discovery requests, (2) the discovery sought related to the issue of whether plaintiff was an employee of Global and that the grant of partial summary judgment on this issue obviated the need for further discovery, and (3) the motion for default was granted at a time when defendants were not represented by counsel, their attorney having recently withdrawn.

Rule 37.02(C) of the Tennessee Rules of Civil Procedure provides that a trial court faced with a party who fails to obey an order to provide discovery may render a judgment by

6

default against the disobedient party. *See **Yearwood, Johnson, Stanton & Crabtree, Inc. v. Foxland Development Venture***, 828 S.W.2d 412 (Tenn. App. 1991). Although this sanction is extreme, it is appropriate "where there has been a clear record of delay or contumacious conduct." ***In re Beckman***, 78 B.R. 516, 518 (M.D. Tenn. 1987). When a trial court exercises its discretion in rendering a default judgment as a sanction, its decision will be disturbed only upon a finding of abuse of that discretion. ***Holt v. Webster***, 638 S.W.2d 391, 394 (Tenn. App. 1982).

Upon review of the extensive record, it is apparent that the defendants' conduct in this case can be described as uncooperative at best. Many of the interrogatories and requests for production of documents went unanswered or were responded to with "boilerplate objections" despite court orders to comply with plaintiff's requests. In fact, the defendants to this day have not verified the answers to interrogatories that they did provide. In addition, when plaintiff traveled to Marietta, Georgia to depose the person designated by Global to testify about corporate structure, bank accounts, franchise relations, hiring, firing, etc, the person designated, Javad Sharifpour, claimed to know nothing about these matters despite the fact that he is president of the corporation. Furthermore, when confronted with his deposition testimony from an unrelated case, Javad Sharifpour was forced to admit that plaintiff had managed one of Global's hotels and that he had been instructed by his father Mohammed to deny it in this litigation.

Defendants contention that the grant of partial summary judgment on the issue of plaintiff's employment status obviated the need for the discovery is also without merit. Defendants are being sued, *inter alia*, for intentional misrepresentation and promissory fraud. The requested discovery was necessary for plaintiff to show not only that plaintiff had worked for Global, but also to demonstrate that defendants lured him to Nashville with no intention of paying plaintiff for his services, and that they conspired to deny that he ever worked for Global at all.

Defendants also contend that plaintiff took unfair advantage of the withdrawal of defendants' counsel by hurriedly filing the motion for default judgment. Deanna Bell, former counsel for defendants, filed a motion to withdraw as counsel of record on May 12, 1995 because

defendants had "been extremely uncooperative in this matter." The motion was granted by the trial court on May 26, 1995, but no order was ever entered. However, the judge did make a hand written note on her calendar granting the motion and giving defendants thirty days to obtain new counsel. In any event, the defendants claim that they did not receive notice of the withdrawal of their counsel until June 2, 1995. Plaintiff's motion for default judgment was filed on June 30, 1995 and served upon defendants Global and Sharifpour at their designated addresses rather than through counsel because plaintiff apparently assumed that defendants' counsel had effectively withdrawn. At the time plaintiff's motion for default was granted on July 21, 1995, the defendants claim they were not represented by counsel. However, Mohammed Sharifpour testified that Global had full time in-house counsel during that period.

Upon careful review of the entire record, we find that the defendants had ample notice of the proceedings and ample opportunity to respond to the orders of the court. We find no abuse of discretion in the trial court's decision to grant plaintiff a default judgment. However, "[a] judgment by default will not authorize a decree in favor of the plaintiff, unless the complaint shows a ground for relief against the defendant." *Gibson's Suits in Chancery*, § 143. (6th ed. 1982). The trial court granted the plaintiff a default judgment on the issues of breach of contract, intentional misrepresentation and promissory fraud. We agree that the complaint supports a claim for relief on these grounds, but find error in the trial court's ruling "that plaintiff's damages are not, as a matter of law, limited to the period of July 1, 1993 - December 8, 1993, and that the plaintiff may proffer such evidence, if any, of damages incurred beyond December 8, 1993." The default judgment was properly granted, however, as explained below in subsection 3B, plaintiff's complaint is insufficient to justify imposing liability for damages incurred after December 8, 1993.

### 3. AWARD OF DAMAGES

**A. Breach of contract**

The jury awarded Plaintiff $40,403 in damages for breach of contract, the breach being the failure of Global to pay Plaintiff for his services and expenses. This figure is the one asserted by Plaintiff's expert as the amount due Plaintiff and includes amounts representing accrued interest and employer's social security contributions. The amount of damages to be awarded

8

rests in the sound discretion of the jury, and if approved by the trial court, will not be disturbed on appeal absent an abuse of discretion. *Ellis v. White Freightliner Corp.*, 603 S.W.2d 125 (Tenn. 1980); *Sholodge Franchise Sys. v. McKibbon Brothers, Inc.*, 919 S.W.2d 36, 42 (Tenn. App. 1995). Although defendants contested the logic behind some of the expert's calculations, we believe that the amount awarded by the jury is supported by the evidence and is within the range of reasonableness. We find no abuse of discretion. Accordingly, we affirm the award to Plaintiff of $40,403 for breach of contract.

## B. Intentional Misrepresentation and Promissory Fraud

In addition to breach of contract, Plaintiff was granted a default judgment on the issues of intentional misrepresentation and promissory fraud. The jury awarded Plaintiff $270,009 on these claims, but the trial court suggested a $205,009 remittitur which the Plaintiff accepted under protest. Up to this point, both the trial court and this Court have discussed the related concepts of intentional misrepresentation and promissory fraud as if they were two distinct causes of action available to the Plaintiff. However, it is more correct to think of intentional misrepresentation as a necessary element of a fraud claim, while promissory fraud is a type of fraud perpetrated by means of a false promise of future action. This Court has enumerated the elements required to sustain a fraud action as follows:

> (1) an intentional misrepresentation with regard to a material fact, (2) knowledge of the representation['s] falsity--that the representation was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity, (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage, and (4) that the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, then the misrepresentation must "embody a promise of future action without the present intention to carry out the promise."

*Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. App. 1990) (citations omitted).

Plaintiff claims that in addition to payment for the five-month period ending December 8, 1993, he is entitled to be compensated for the three year period between his last day of employment and the second trial. Plaintiff concedes that he cannot recover for the three years subsequent to his departure under a breach of contract theory. Therefore, in order to recover for damages sustained after December 8, 1993, Plaintiff must show that any damages incurred were proximately caused by an intentional misrepresentation of an existing or past fact that Plaintiff

relied upon to his detriment; or that the damages incurred were proximately caused by his reliance on a promise of future action that was made without the present intention of fulfilling that promise. Plaintiff claims that he was unable to get another job because defendants represented to potential employers that he had never worked for Global. Although this denial by Global was false, it was not a misrepresentation made to Plaintiff, nor could Plaintiff have detrimentally relied upon it since it occurred after he left the employ of Global. Therefore, Plaintiff can only succeed if he can show that the defendants made a promise regarding actions to be taken after Plaintiff's employment ceased, and that reliance on that promise proximately caused the loss of wages for the subsequent three years. There is no such evidence in the record, nor is there even an allegation in the complaint that Plaintiff relied upon a promise made by one of the defendants to acknowledge his employment with Global at some time in the future. It may be true that plaintiff's reputation in the travel industry has suffered because of Global's refusal to acknowledge plaintiff's employment, however, that denial is not actionable as fraud. Plaintiff's allegations most closely resemble a claim for interference with prospective economic advantage, however, our Supreme Court has recently held that there is no such cause of action under Tennessee law. *Nelson v. Martin*, 958 S.W.2d 643 (Tenn. 1997). We hold that as a matter of law, Plaintiff cannot recover damages for the three year period subsequent to his departure under theories of breach of contract, intentional misrepresentation or promissory fraud.

Plaintiff is entitled, however, to recover damages incurred during the period of his employment as a result of promissory fraud if he can show that he incurred damages beyond those awarded for breach of contract. The injured party should be compensated for the actual injuries sustained by placing him in the same position he would have occupied had the wrongdoer performed and the fraud not occured. *Blasingame v. American Materials, Inc.*, 654 S.W.2d 659, 665 (Tenn. 1983). Whether the theory of recovery is breach of contract, intentional misrepresentation, or promissory fraud, if the damages claimed under each theory overlap, the Plaintiff is only entitled to one recovery. *Allied Sound, Inc. v. Neely*, 909 S.W.2d 815, 821 (Tenn. App. 1995).

Plaintiff has neither pled nor proven damages different in kind or amount sufficient to justify an award of damages beyond what he was awarded for breach of contract. Therefore, we

must vacate the trail court's award of $65,000 in damages (after remittitur) on the claim of misrepresentation and promissory fraud.

## 4. PROCUREMENT OF BREACH OF CONTRACT

Plaintiff sued defendant Sharifpour individually for procurement of breach of contract pursuant to T.C.A. § 47-50-109 which provides:

> It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured
>
> by such breach may bring suit for the breach and for such damages.

This section is a codification of the common law tort action and provides for mandatory treble damages if there is a *clear showing* that the defendant induced the breach. ***Polk & Sullivan, Inc. v. United Cities Gas Co.***, 783 S.W.2d 538, 542 (Tenn. 1989). In order to recover under the statute, the plaintiff must prove that: (1) there was a legal contract; (2) the wrongdoer was aware of the contract; (3) the defendant intended to induce a breach; (4) the defendant acted maliciously; (5) the contract was actually breached; (6) the act complained of was the proximate cause of the breach; and (7) damages resulted from the breach. ***Id.*** at 543; ***Myers v. Pickering Firm, Inc.***, 959 S.W.2d 152, 158 (Tenn. App. 1997).

Plaintiff was not granted a default judgment on this issue, however, the jury found that defendant Sharifpour had induced the breach of plaintiff's contract with Global. In reviewing a jury verdict where the standard of proof required is clear and convincing evidence, this Court must examine the record to determine if there is clear, cogent and convincing evidence to support the findings of the jury. ***Shell v. Law***, 935 S.W.2d 402, 405 (Tenn. App. 1996). Clear and convincing evidence means that the plaintiff has shown that there is no serious or substantial doubt about the conclusions the plaintiff is attempting to prove. ***O'Daniel v. Messier***, 905 S.W.2d 182, 188 (Tenn. App. 1995).

For the record, we would like to point out that we have serious doubts about whether Sharifpour is a proper defendant for a procurement of breach action. It is abundantly clear that

11

Global is controlled by Sharifpour, and that his sons who are the actual owners and officers of the corporation have no idea what is going on under their noses. Sharifpour is so closely tied to the operations of Global as either an agent or "advisor" that he is more akin to a *defacto* officer than a third party. However, we need not rule on this question because careful review of all trial and deposition testimony has revealed no testimony which indicates that Mr. Sharifpour instructed any employee or officer of Global not to pay plaintiff for his services. Plaintiff testified that when he was not paid at the end of the first payroll cycle he contacted Mr. Compani who stated "Mr. Sharifpour did not instruct me or order me to have you on payroll, and I'd rather have you -- have you on payroll in home office." A failure to give an order to place plaintiff on the payroll falls far short of an order not to do so, and in any event, would not comprise clear and convincing evidence of an inducement to breach the contract. There is ample evidence in the record to indicate that Sharifpour instructed his sons to deny that plaintiff was ever an employee and that he knew this would make it difficult for plaintiff to find other employment. However, these acts occured after the breach complained of and cannot as a matter of law have induced the breach. Ironically, the one person who could corroborate plaintiff's allegations, Behzad Compani, was never deposed or called as a witness. The affidavit of Mr. Compani filed in support of plaintiff's motion for partial summary judgment could be read as implying that Sharifpour had instructed Compani not to place plaintiff on the payroll, but that affidavit was not before the jury.

Although we have no doubt that plaintiff was not paid, and that it is likely that Sharifpour, who was calling the shots for Global, never intended to pay plaintiff, there is not clear and convincing evidence[1] from which a jury could reasonably find that Sharifpour procured the breach of contract. Therefore, we must vacate the portion of the trial court's order awarding treble damages for procurement of breach of contract pursuant to T.C.A. § 47-50-109.

5. DISCRETIONARY COSTS

The trial court awarded plaintiff discretionary costs in the amount of $5,985.55. The

---

[1] Plaintiff's counsel advised the trial court that since treble damages provided for in the statute are in lieu of punitive damages, the standard of proof required of plaintiff in a procurement of breach case should be clear and convincing evidence. To the extent that this standard may be in dispute, we hold, in the alternative, that there is not material evidence in the record to support the verdict of the jury.

majority of the $7,619.07 requested by plaintiff went to the expert economist hired to testify to plaintiff's damages. Defendants assert that since plaintiff is only entitled to recover unpaid wages for the five months he worked for Global, it was unnecessary to hire an expert to make that calculation.

The Tennessee Rules of Civil Procedure permit the trial court to award a party discretionary costs that are for "reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions or trials, and guardian ad litem fees." Tenn. R. Civ. P. 54.04(2). "[T]ravel expenses are not allowable discretionary costs." *Id.* Our Supreme Court has held that recovery of expert fees under the rule is limited to fees incurred for actual deposition or trial testimony. Fees for preparation time are not recoverable. *Miles v. Marshall C. Voss Health Care Ctr.*, 896 S.W.2d 773 (Tenn. 1995). As the term itself suggests, the decision whether to award a party discretionary costs rests with the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. Tenn. R. Civ. P. 54.04(2); *Lock v. National Union Fire Ins. Co.*, 809 S.W.2d 483 (Tenn. 1991).

Plaintiff filed an exhibit detailing costs incurred in this matter totaling $7,591.56. It is unclear why this amount differs from the total amount requested in plaintiff's motion; why the total amount of expert fees incurred is not included in the exhibit; or how the trial court arrived at the figure awarded. The expert witness fees and expenses detailed in plaintiff's exhibit B to his motion for discretionary costs comprise $4,004.02 of the total $7,591.56 requested. It appears that when the trial court awarded plaintiff $5985.55 it wrongly awarded at least a portion of the expert's fees and travel expenses, and perhaps some other expressly disallowed costs as well. Although the parties dispute the necessity of the expert's testimony, the testimony was permitted by the trial court and not objected to by the defendants. We hold that given the nature of this case and the conduct of the defendants, the trial court properly decided to award discretionary costs. However, the plaintiff is entitled to recover only those costs specifically provided for in Tenn. R. Civ. P. 54.04(2), and we vacate the trial court's previous award and remand the case for a determination of the proper discretionary costs in accordance with the Rule and this opinion.

REMITTITUR & PUNITIVE DAMAGES

13

Plaintiff assigns error to the trial court's suggestion of remittitur and its failure to send the issue of punitive damages to the jury. The question of the propriety of the trial court's suggested remittitur is moot because we have already held that the plaintiff is not entitled to recover damages for intentional misrepresentation and promissory fraud beyond his five month period of employment. As for the failure of the trial court to charge the jury regarding punitive damages, that issue is waived because the plaintiff failed to raise the issue in a motion for a new trial. T.R.A.P. 3(e).

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and remanded. The judgment of the trial court on the jury award to plaintiff of $40,403 for breach of contract is affirmed. The award of discretionary costs is reversed and remanded for recalculation in accordance with this opinion. The award of damages for misrepresentation, promissory fraud, and procurement of breach of contract is reversed. Costs of the appeal are assessed one-half to plaintiff and one-half to defendants.

_____
**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**


_____
**ALAN E. HIGHERS, JUDGE**


_____
**DAVID R. FARMER, JUDGE**

14