IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 6, 2003 Session

## DUDLEY STOVALL, SR., ET AL. v. WILLIAM THOMAS BAGSBY, JR., ET AL.

Appeal from the Chancery Court for Williamson County
No. 25000     Russ Heldman, Chancellor

---

### No. M2002-01901-COA-R3-CV - Filed November 24, 2003

---

This twice-tried boundary line litigation, spanning five years, involves a small square-footage of a long-existing private roadway, five surveyors-engineers, and a host of lay witnesses. The Chancellor adopted the expert opinion of one of the surveyors with respect to the precise location of a crucial corner of the roadway. We affirm except as modified with respect to discretionary costs, which requires a remand for determination.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is
Affirmed as Modified and Remanded**

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., and WILLIAM B. CAIN, JJ., joined.

Christopher D. Cravens, Nashville, Tennessee, attorney for Appellants, William Thomas Bagsby, Jr. and Velma K. Bagsby.

Douglas S. Hale, Franklin, Tennessee, attorney for appellees, Dudley Stovall, Sr., and Betty Carolina Stovall.

Julia E. Stovall, Franklin, Tennessee, attorney for appellee, Martha Oakley

### OPINION
### I.

This a boundary dispute, at the core of which is a private roadway identified as Jackson Lane, which was created in 1932 as "a strip of land 16 feet in width" to serve the Stovall property as the sole means of access to a public roadway. This private roadway has been used by the Stovalls for more than twenty years, and title thereto was decretally awarded to the Stovalls according to the equitable principle of adverse possession. This adjudication is not questioned on appeal except as to its exact location.

## II.

The property of Oakley bounds Jackson Lane on the east; the Bagsby property bounds Jackson Lane on the west. The lane is 1096 feet in length, straight-line measure, or 1102.29 feet, according to conflictive measurements. At issue is the portion of Jackson Lane abutting the eastern boundary of the Bagsby land extending from the public road to a point where it intersects with Bagsbys' northeast corner and physically widens to twenty-one feet.

From 1936 to 1984 the width of Jackson Lane was not changed and Bagsbys' northeast corner was rounded along its western margin until it was gradually "squared off" and the corner relocated by defendants in accordance with Ronnie Brown's survey in 1984. Stovall objected to this relocation of Bagsbys' northeast corner although it did not interfere with the use of Jackson Lane. Mr. Bagsby testified that prior to retaining the services of Randolph Chapdelaine, none of the other surveyors, who had been retained to relocate his northeast corner, had opined that Jackson Lane encroached on the Bagsby Tract.

Thereafter, the Bagsbys removed the fence along the entire western margin of Jackson Lane, which was the eastern boundary of their land, and announced their intentions to erect a new fence that would encroach upon the asphalt surface of the lane. Stovall objected because the new fence Bagsby planned to erect would interfere with the use of Jackson Lane since it would extend approximately five feet into the asphalt pavement at the northeast corner.

Evidence was presented that Jackson Lane had been in existence for over fifty years, and that it had always existed between the Oakley fence and the Bagsby fences in such the same location as it presently exists and that the northeast corner of the Bagsby Tract was always rounded.

## III.

This case was tried twice before different trial judges. The first trial proceeded to final judgment and a new trial was awarded after a procedural morass developed involving conflicting decretal provisions. The testimony at the first trial was preserved and presented, at least in part, at the second trial. A host of witnesses testified, five of whom were licensed surveyors. The Chancellor ruled that the Stovalls had acquired title to Jackson Lane together with "a twenty-one and one-half foot area in its northeast corner" by adverse possession, and prohibited the Bagsbys from establishing their eastern line to interfere with Jackson Lane. Decretal provisions were again questioned, resulting in the adoption by the Chancellor of the survey performed by Ron Lowery, who was initially retained by Mr. Bagsby to identify and locate a "property line, a deed line" on the east side of Jackson Lane. Lowery believed a boundary survey was required in order to identify the precise line. Mr. Bagsby objected to Lowery's site selection of the northwest corner of his property, but not the southeast corner, because it should have referenced an existing stump. Mr. Bagsby thereupon instructed Lowery to set no pins and leave the premises.

Lowery testified that Mr. Bagsby believed his northeast corner should have been located with reference to a stump called for in the Stovall deed, but Lowery disagreed. The Chancellor approved and adopted the survey of Lowery and decreed accordingly. The Chancellor found, *inter alia*:

> The 16-foot right of way for Jackson Lane was first reserved [created] in 1932, the physical boundaries of which were established in 1937. The Stovalls have exercised sufficient control over the entire length of Jackson Lane together with the 21.5 -foot area at its NS corner for more than 20 years, and that such control was open, continuous, actual, adverse and notorious. The NE corner of the Bagsby Tract is 1096 linear feet from the NW corner of the tract. The survey by Chapdelaine is not an accurate description of the land owned by Bagsby. The Oakley fence is an ancient monument establishing the western boundary of the Oakley property and, consequently, the eastern boundary of Jackson Lane.

## VI.

The Bagsbys appeal and present for review two issues: (1) whether the trial court erred in establishing their eastern boundary and northeastern corner according to the survey of Tom Lowery, and (2) whether it was error to allow Stovall discretionary costs of $8000.00.

## V.

As a preliminary matter, we turn to the applicable standard of review. Because this is an appeal from a decision made by the court following a bench trial, the standard set forth in Tenn. R. App. P. 13(d) governs our review. Thus, we must examine the record *de novo* and presume that the findings of fact are correct "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). Furthermore, great weight must be given to the factual findings made by the trial court that rest on determinations of credibility. *See Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996). The presumption of correctness requires us to accept the trial court's findings of fact unless the aggregate weight of the evidence demonstrated that a finding of fact other than the one found by the trial court is more probably true. *See Estate of Haynes v. Braden*, 835 S.W.2d 19, 20 (Tenn. Ct. App. 1992) (holding that an appellate court is bound to respect a trial court's findings if it cannot determine that the evidence preponderates otherwise). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *See The Realty Shop, Inc. v. RR Westminister Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Questions of law receive plenary review. *See Malone & Hyde Food Servs. v. Parson*, 642 S.W.2d 157, 159 (Tenn., Ct. App. 1982).

This standard also applies in boundary disputes when the trial court, as the finder of fact, is required to choose between two competing surveys. *See, e.g.*, *Horne v. Warmath*, No. 02A01-9509-CH-00201, 1996 WL 465546 (Tenn. App. Aug. 16, 1996) *perm. app. denied* (Tenn. Jan 16, 1997);

*McMahan v. Douglas*, 1988 WL 20542 (Tenn. App. March 4, 1988), *perm. app. denied* (Tenn. May 23, 1988).

## VI.

Defendants argue that in establishing the Bagsbys' northeast corner and the western margin of Jackson Lane, the trial court erred in adopting the survey of Ron Lowery, because he failed to give priority to natural monuments over courses and distances, relying on the well-settled rule that in determining disputed boundaries, resort is to be had first to natural objects or landmarks; next to artificial monuments or marks; then to boundary lines of adjacent landowners; and finally to courses and distances. **Prichard v. Rebori**, 186 S.W.121 (Tenn. 1916).

The Bagsbys take issue with the failure of Lowery to recognize an old stump in determining the margins of Jackson Lane, because the lane itself is only required to be sixteen (16) feet wide, and is significantly wider as it corners the Stovall Tract. Contrary to all but one surveyor, the Bagsbys insist that the "Lowery survey cannot be relied on as an accurate depiction of the location of the Bagsbys' northeastern corner or eastern line, because the establishment of both is dependent upon the correct establishment of the location of Jackson Lane." This contention is contrary to the testimony of Lowery and another surveyor, Fuqua, that the Bagsbys' northeast corner does not require the prior location of Jackson Lane. The Bagsbys had no quarrel with Lowery's location of their southeastern and northwestern corners, and the basic agreement among all experts participating in this trial was that the northwest corner of defendants' property was appropriately located. Mr. Bagsby testified otherwise, but it is clear that the trial court rejected portions of his testimony.

The judgment does not preponderate against the trial court's findings and therefore is affirmed, Rule 13(d) Tenn. R. App. P., except as hereafter noted.

## VII.

The second issue concerns the award of $8,000.00 discretionary costs to the Stovalls. Rule 54.04(2) Tenn. R. Civ. Pro. Rule 54.04(2) provides:

> Rule 54.04   Costs
>
> (1)   Costs included in the bill of costs prepared by the clerk shall be allowed to the prevailing party unless the court otherwise directs, but costs against the state, its officer, or its agencies shall be imposed only to the extent permitted by law.
>
> (2)   Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion. Discretionary costs allowable are: reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions

or trial, and guardian ad litem fees; travel expenses are not allowable discretionary costs. Subject to Rule 41.04, a party requesting discretionary costs shall file and serve a motion within thirty (30) days after entry of judgment. The trial court retains jurisdiction over a motion for discretionary costs even though a party has filed a notice of appeal. The court may tax discretionary costs at the time of voluntary dismissal.

(3) The court may appoint an interpreter of its own selection and may fix reasonable compensation. The compensation shall be paid out of funds provided by law or by one or more of the parties as the court may direct, and may be taxed ultimately as costs in the discretion of the court.

The motion for discretionary costs as amended included *court-ordered* surveying and engineering expenses owing to Ragan-Smith Associates in the amount of $6696.52. These expenses should be taxed as court costs, rather than as discretionary costs. Invoices from other surveyors do not distinguish fees for field and administrative work from fees for testifying, and we are unable to make the distinction.

The rule is made clear in *Miles v. Voss Health Care Center*, 896 S.W.2d 773 (Tenn. 1995):

However, the rule specifically limits discretionary costs with regard to expert witnesses to their fees for testifying. The record reveals that Dr. Colvin met with the employee one time for the purpose of evaluating her disability. He also spent time reviewing the medical proof as part of his evaluation. He testified in person at the trial. He charged $750 for his services. The employee's motion for discretionary costs does not indicate how much of Dr. Colvin's fee was for his evaluation, and how much was for his appearance and testimony at trial. Since, as indicated above, the portion of the fee charged for evaluating the employee is not recoverable under Rule 54.04(2), but the portion of the fee charged for his trial testimony is recoverable as discretionary cost, the case must be remanded to the trial court to make this determination.

*See,* also, *Shahrdar v. Global Housing, Inc.*, 983 S.W.2d 230 (Tenn. Ct. App. 1998) holding that " . . . . recovery of expert fees under the rule is limited *to fees incurred for actual deposition or trial testimony*. (Emphasis added). Fees for preparation time are not recoverable."

As in *Miles, supra,* the case must be remanded to the trial court to make this determination.

The judgment is affirmed, except as modified with respect to the discretionary costs, and remanded to the trial court. Costs on appeal are assessed to the appellants.

_____
WILLIAM H. INMAN, SENIOR JUDGE