IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 4, 2023 Session

**PAUL PLOFCHAN v. JAMES HUGHEY ET. AL.**

**Appeal from the Circuit Court for Davidson County**
**No. 17C727   Thomas W. Brothers, Judge**

_____

**No. M2021-00853-COA-R3-CV**

_____

A man sued his arresting officers and others.  He claimed he was neither drunk nor violent when he was arrested and charged with public intoxication, resisting arrest, and assault on an officer.  During discovery, the man claimed to have no communications between him and a companion that were not protected by attorney-client privilege or as work product. When such communications were uncovered, the defendants moved for sanctions and attorney's fees.  The trial court awarded attorney's fees to the defendants and the companion.  And it dismissed the case as a sanction.  Discerning no abuse of discretion, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT JR., P.J., M.S., and JEFFREY USMAN, J., joined.

Thomas K. Plofchan, Potomac Falls, Virginia and E. Kendall White, IV, Franklin, Tennessee, for the appellant, Paul Plofchan.

Kevin C. Klein and Ryan P. Loofbourrow, Nashville, Tennessee, for the appellees, James Hughey, Michael Knupp, Charles Stevens, Vanderbilt University, and Vanderbilt University Police Department.

**OPINION**

**I.**

**A.**

Paul J. Plofchan Jr. was drinking at a bar during a bachelor party when he met Madeleine Byrd. She was with him later when he was confronted by a Vanderbilt University Police Department officer. According to the officer, Mr. Plofchan was extremely intoxicated, hostile, and belligerent, so he called more officers to the scene. Mr. Plofchan insulted the officers when they asked for his identification and became aggressive when they attempted to place him in handcuffs. He was arrested and charged with public intoxication, resisting arrest, and assault on a police officer.

On May 26, 2015, Mr. Plofchan and Ms. Byrd conversed about the event via Facebook Messenger. Ms. Byrd had sent Mr. Plofchan a message asking if he had her cell phone. Mr. Plofchan responded that he did not remember anything that happened after they left the bar. He asked her to describe what she recalled. She explained that he was shirtless when stopped by the police officer. And he insisted on speaking Russian, insulted the officer, and tried to fight him. Ms. Byrd said that Mr. Plofchan became "aggressive" when the officer called for backup and was "really extremely[,] extremely resistant" when officers put him in handcuffs. Mr. Plofchan said he did not usually act that way, but had "way too much booze" that night.

Later, Mr. Plofchan's then-girlfriend sent Ms. Byrd a message via his Facebook Messenger account. The girlfriend, now Mr. Plofchan's wife, told Ms. Byrd that they had her phone and would mail it. She then asked Ms. Byrd to describe what happened between her and Mr. Plofchan. Ms. Byrd explained what she remembered and stated that Mr. Plofchan was "really drunk" throughout the night.

On June 4, 2015, Mr. Plofchan sent Ms. Byrd a message asking for more specific details about their encounter with the police. Ms. Byrd indicated that they were not unruly when the police arrived, but Mr. Plofchan had taken off his shirt, placed it on the ground, and was urinating on it. She reiterated that he "didn't make it easy" when the police arrested him.

Two weeks later, the criminal charges against Mr. Plofchan were dismissed and expunged from his record. But Mr. Plofchan, who was a first lieutenant in the United States Army, still faced an Army disciplinary investigation of his arrest.

On September 25, 2015, Mr. Plofchan again reached out to Ms. Byrd via Facebook Messenger. He asked if she would speak with his attorney and prepare a statement for the Army. Mr. Plofchan "was hoping [she] would say something along the lines of we were just standing there, minding our own business, you weren't in distress or anything, then the cops showed up and started demanding ID." She initially provided a phone number so that Mr. Plofchan's attorney could contact her. But a few days later, she informed Mr. Plofchan that she was hesitant to be involved and would not make a statement until she spoke with an attorney. She then blocked Mr. Plofchan's access to her Facebook account.

2

B.

On March 27, 2017, Mr. Plofchan sued, among others, the three arresting officers; the Vanderbilt University Police Department; and Vanderbilt University. Eventually, the suit was pared down to claims against the officers for defamation and negligence per se and against Vanderbilt University under the doctrine of respondeat superior. Mr. Plofchan alleged the officers defamed him by fabricating and repeating the story about his conduct on the night of the arrest. And he alleged they were negligent per se because they disclosed records and information about his conduct and the resulting charges to the Army, supposedly contrary to state statute. *See* Tenn. Code Ann. § 40-32-101(a)(1)(A) (Supp. 2023) (requiring the removal and destruction of public records of a person charged with a misdemeanor or a felony after dismissal of the charges).

During discovery, the defendants submitted requests for the production of documents that might substantiate the circumstances surrounding the arrest. Request 9 asked Mr. Plofchan to produce "[a]ny and all emails, text messages, or other correspondence with Madeline Byrd." He responded, "[n]one."

Mr. Plofchan also claimed privilege protections in response to two other discovery requests. Request 20 asked for "[a]ll notes, texts, emails, or any other data stored on any mobile device (including iPhone or iPad) of which you were the primary user, that relate in any way to the incidents that form the basis for this lawsuit or that you may use to support any of your claims in this case." He objected on the basis of "attorney-client privileged communication and/or work product" but added, "in the spirit of cooperation, none." And Request 13 sought "[a]ll e-mails, letters, text messages, or other correspondence you have sent or received that relate in any way to the incidents that form the basis for this lawsuit or that you may use to support any of your claims in this case." He objected on the same basis. When the court ordered Mr. Plofchan to comply with Request 13, "excluding any communications with counsel," he supplemented his response with "[i]n a spirit of cooperation, none that are not privileged."

Mr. Plofchan testified during his first deposition that he "conducted a search" for any correspondence he had with Ms. Byrd, but he "didn't have anything." He also testified that he did not remember communicating with her after the arrest. However, Ms. Byrd, through her own counsel, allowed the defendants' counsel to review his messages with her.

The defendants then deposed Mrs. Plofchan. She testified that she recalled sitting with Mr. Plofchan when he and Ms. Byrd first communicated via Facebook Messenger after the arrest. And she saw the messages on Mr. Plofchan's Facebook Messenger account the day before her deposition, but she did not read them. She did not remember much of the substance of the messages. And she was not involved in the conversation after Ms. Byrd's phone was returned.

3

Based on Mrs. Plofchan's deposition and communications with Ms. Byrd, the defendants demanded that Mr. Plofchan supplement his discovery responses and provide them with a copy of the messages. But Mr. Plofchan did not provide all of the messages. He only provided the messages starting on June 4, 2015. He did not indicate that other messages from May 26, 2015 existed. And he did not assert that any of the messages were privileged or protected as work product. Shortly after, Ms. Byrd provided a copy of all the messages, including those from May 26, 2015.

During a second deposition, Mr. Plofchan maintained that he had performed a diligent search before responding to the defendants' initial discovery requests. But he claimed that he forgot about the messages until his wife reminded him. He repeatedly stated that he did not remember communicating with Ms. Byrd after the arrest due to "amnesia" he suffered from the police officers' "beating." And although he had initially testified that he did not delete any messages from his Facebook Messenger account, once he was confronted with the messages from May 26, 2015, he said that it was possible that he or someone with access to his Facebook Messenger account deleted them.

The defendants moved to dismiss Mr. Plofchan's claims as a sanction for failing to comply with the court's order compelling him to produce any nonprivileged information regarding the lawsuit. *See* TENN. R. CIV. P. 37.02. The court found Mr. Plofchan's contention that he forgot about the messages "disingenuous." It concluded that he concealed evidence. *See id.* 34A.02. And he failed to timely supplement his discovery responses after accessing the messages. *See id.* 37.03(1). The court concluded that his "blatant prevarication and misconduct warrant[ed] the most severe sanctions." It dismissed the case.

The court also ordered the defendants to submit an itemized statement of requested attorney's fees and costs. The defendants submitted copies of billing records and a declaration from counsel addressing the necessity and reasonableness of the fees incurred. Mr. Plofchan did not file a response to their request.

C.

Mr. Plofchan then filed several motions, including a motion to reconsider the dismissal. He first argued that the court erred by finding that he concealed evidence without holding an evidentiary hearing. Second, he claimed that the messages were protected work product because his attorney asked him to reach out to Ms. Byrd to obtain information about the arrest. Third, Mr. Plofchan argued that he could not have produced the May 26, 2015 messages because he did not have access to them. He and Mrs. Plofchan also filed affidavits stating that he deleted those messages at Mrs. Plofchan's direction.

4

The court denied all of Mr. Plofchan's motions. It found that Mr. Plofchan was "not a credible witness." And his argument that the messages were work product was "novel" but "not well taken." It reiterated that dismissal was an appropriate sanction.

Mr. Plofchan filed a second motion to reconsider.[1] He claimed that the billing records submitted in support of the request for attorney's fees were "newly discovered evidence that reveal[ed] misrepresentation and apparent fraud on the Court by Defendants and their counsel." He contended that the records revealed that the defendants had manufactured a discovery "ruse" as a way to get the case dismissed because they showed that defendants' counsel was in communication with Ms. Byrd in 2019.

The court denied Mr. Plofchan's second motion to reconsider. It awarded the defendants attorney's fees and costs for work following Mr. Plofchan's first deposition "wherein [he] first concealed the existence of messages with Ms. Byrd." This amounted to $50,000.00 in attorney's fees[2] and $5,917.86 in costs. The court also awarded the defendants another $8,500.00 and Ms. Byrd's counsel $2,415.00 for the attorney's fees incurred opposing subpoenas that Mr. Plofchan issued along with his second motion to reconsider.

## II.

Mr. Plofchan raises three issues on appeal. First, he argues that the trial court erred in dismissing his case as a discovery sanction. Next, he argues that the court erred in not granting his second motion to reconsider. Finally, he argues that the court erred in awarding attorney's fees and costs to Defendants and Ms. Byrd.

We review both a trial court's decision to impose discovery sanctions and its decision on a motion to set aside or to alter or amend[3] for an abuse of discretion. *Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012); *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 133 (Tenn. 2004); *Harris v. Chern*, 33 S.W.3d 741, 746 (Tenn. 2000). Our review of discretionary decisions is limited. *Beard v. Bd. of Prof'l Resp.*, 288 S.W.3d 838, 860 (Tenn. 2009). We do not "second-guess the court below" or "substitute [our]

---

[1] Mr. Plofchan also filed a motion to compel. And he issued subpoenas to Vanderbilt University, counsel for the defendants, and counsel for Ms. Byrd. The trial court denied the motions and quashed the subpoenas.

[2] The court determined that the total fees incurred by the defendants after this time was $61,000.11. But the court reduced this number to an award of $50,000.00 because it "ha[d] already imposed the severe sanction of dismissal."

[3] We review Mr. Plofchan's motion to reconsider under the standard for a motion to set aside or to alter or amend. *See* Section II(B), *infra*.

discretion for the lower court's." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Instead, we consider "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Id.* We uphold the trial court's ruling as "long as reasonable minds can disagree as to [the] propriety of the decision made." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)).

We review questions of law de novo with no presumption of correctness. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). But we afford factual findings a presumption of correctness unless the evidence preponderates otherwise. *See* TENN. R. APP. P. 13(d). We typically give great deference to the trial court's credibility assessments. *Watson v. Watson*, 309 S.W.3d 483, 490 (Tenn. Ct. App. 2009). But when "a trial court's findings of fact [are] based on documentary evidence such as depositions, transcripts, or video recordings," we may draw our "own conclusions with regard to [its] weight and credibility." *Kelly v. Kelly*, 445 S.W.3d 685, 693 (Tenn. 2014).

A.

Mr. Plofchan first argues that the trial court erred in dismissing his case as a sanction. We first review whether any discovery sanction was warranted. If so, we determine whether dismissal was the appropriate sanction.

1. Appropriateness of Sanctions

Mr. Plofchan first argues that the trial court erred in finding his explanation that he forgot about the messages "disingenuous." He claims that the court could not make such a finding without first holding an evidentiary hearing. And even if it could, the record evidence preponderates against the court's finding.

This Court has routinely affirmed sanctions imposed by trial courts that did not hold evidentiary hearings. *See, e.g*, *Langlois v. Energy Automation Sys., Inc.*, 332 S.W.3d 353, 356, 359 (Tenn. Ct. App. 2009); *Alexander v. Jackson Radiology Assocs., P.A.*, 156 S.W.3d 11, 13-14, 17 (Tenn. Ct. App. 2004). And Mr. Plofchan did not request a hearing. So we find no error in the court imposing sanctions on documentary evidence alone.

In reviewing this evidence, we conclude that it does not preponderate against the court's findings. The trial court determined that Mr. Plofchan was "not a credible witness" based on his "conflicting testimony and sworn discovery responses as well as his demeanor in court." Mr. Plofchan had originally maintained that he was not aware of any communications between him and Ms. Byrd. When confronted with some messages, he testified that he had forgotten about them. The trial court found that "no reasonable person

6

would 'forget' about the existence of the communication between himself and Ms. Byrd concerning the events of that night." Among other things, Mr. Plofchan "was arrested and handcuffed while partially clothed," "faced the ire of his then girlfriend, now wife," and "was required to face both a criminal hearing and a military tribunal." And although Mr. Plofchan claimed at that time that he had not deleted any messages from his Facebook Messenger account, he later changed his story again when confronted with those messages. He then claimed he deleted them at Ms. Plofchan's direction.

Mr. Plofchan next contends that he could not be sanctioned for failing to disclose the messages because they were protected as work product. He maintains that they are work product because his attorney instructed him to contact Ms. Byrd. As he explains, "communications by an agent of the attorney are protected by work product" and this may include "the client acting as agent." To invoke the work product doctrine, a party must "establish (1) that the materials sought are documents or tangible things, (2) that the documents were prepared in anticipation of litigation or for trial, and (3) that the documents were prepared by or for another party or by or for that other party's representative." *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 221 (Tenn. Ct. App. 2002); TENN. R. CIV. P. 26.02(3). The party asserting the protection bears the burden of proving that the material is work product. *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Grp. Tr.*, 209 S.W.3d 602, 617 (Tenn. 2006); *Boyd*, 88 S.W.3d at 220-21. Mr. Plofchan's attorney never filed an affidavit stating that the messages were prepared in anticipation of litigation. So Mr. Plofchan did not carry his burden of proving that the messages were work product.

Mr. Plofchan next argues that the court abused its discretion in sanctioning him for failing to timely supplement his discovery responses because he claims that he did so. Parties must seasonably amend "prior discovery responses that were incorrect when made or are no longer correct." *Little v. City of Chattanooga*, 650 S.W.3d 326, 366 (Tenn. Ct. App. 2022); TENN. R. CIV. P. 26.05(2). Failure to do so can result in sanctions. *Little*, 650 S.W.3d at 366; TENN. R. CIV. P. 37.03(1). Mr. Plofchan contends that he supplemented his discovery responses two business days after his wife reminded him of the messages' existence. But the court found his claim "disingenuous." And the evidence does not preponderate against that finding.

Mr. Plofchan also argues that he could not be sanctioned for not producing the messages from May 26, 2015, because "[t]here is no evidence that [he] had access to [those messages." It may be true that he did not have access to those messages. But that is no excuse for failing to produce the others. The court did not abuse its discretion in sanctioning Mr. Plofchan for failing to supplement his discovery responses.

2. Dismissal as the Proper Sanction

Mr. Plofchan contends that, even if sanctions were appropriate, dismissal of the case was too harsh. When warranted, a trial court may dismiss an action when a party conceals

evidence during discovery or fails to comply with orders of the court. TENN. R. CIV. P. 34A.02, 37.02(C), 37.03(1), 41.02(1). The trial judge [is] in the best position to determine whether [a party's] actions and inactions throughout the proceedings support[] an order to dismiss [the case]." *Langlois*, 332 S.W.3d at 359. This is a case-by-case determination. *Murray v. Christian Methodist Episcopal Church*, 153 S.W.3d 371, 378 (Tenn. Ct. App. 2004). The power must be exercised with restraint because "[t]he interests of justice are best served when lawsuits are resolved on their merits." *Langlois*, 332 S.W.3d at 357 (quoting *Orten v. Orten*, 185 S.W.3d 825, 836 (Tenn. Ct. App. 2005) (Lee, J., dissenting)); *see Holt v. Webster*, 638 S.W.2d 391, 394 (Tenn. Ct. App. 1982) (noting that dismissal is a harsh yet necessary sanction in appropriate circumstances). "[A] clear record of delay or contumacious conduct" is enough to justify a sanction of dismissal. *Shahrdar v. Glob. Hous., Inc.*, 983 S.W.2d 230, 236 (Tenn. Ct. App. 1998) (quoting *In re Beckman*, 78 B.R. 516, 518 (M.D. Tenn. 1987)).

Mr. Plofchan asserts that the defendants were not prejudiced by his failure to disclose the messages because their counsel knew about the messages and were able to acquire them. But a showing of prejudice is not required when a party repeatedly disobeys orders of the court and lies about the existence of evidence.

Mr. Plofchan misrepresented whether communications with Ms. Byrd existed. He maintained this position in the face of an order to compel production and during his first deposition. When confronted with the messages, Mr. Plofchan reported that he forgot about their existence, but was "pretty sure" he did not delete any of the messages. When that too was revealed to be false, he claimed that he deleted some of the messages at his wife's direction. The court's choice of dismissal was within the range of acceptable dispositions for such actions.

### B.

Mr. Plofchan next contends that the court erred in denying his second motion to reconsider. Tennessee law does not recognize a general "motion to reconsider." *Regions Bank v. Prager*, 625 S.W.3d 842, 845 n.2 (Tenn. 2021). Instead, parties may file motions to set aside or to alter or amend previous decisions of the trial court. *See Discover Bank*, 363 S.W.3d at 488-89 (outlining the procedural rules that "govern motions to set aside previous trial court decisions"). When faced with a "motion to reconsider," we "consider the substance of a motion rather than its title or form" and construe it accordingly. *Regions Bank*, 625 S.W.3d at 845 n.2.

The court's decision to dismiss Mr. Plofchan's case was "subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties." TENN. R. CIV. P. 54.02(1). Mr. Plofchan argues that the court should have reconsidered the dismissal because of the "newly discovered evidence" in defense counsels' billing records that showed the defendants were in contact with

Ms. Byrd. He claims they merely feigned ignorance about the messages to create a basis to dismiss the lawsuit.

But when the defendants became aware of the messages was irrelevant to the court's decision to dismiss Mr. Plofchan's case. The court dismissed the case because Mr. Plofchan concealed evidence and was not truthful about the existence of communications with Ms. Byrd. So the court did not abuse its discretion in denying Mr. Plofchan's motion to reconsider.

C.

Finally, Mr. Plofchan argues the court erred in awarding attorney's fees to the defendants and Ms. Byrd. Tennessee Rule of Civil Procedure 37.02 directs the trial court to order a party who fails to obey a discovery order to "pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." TENN. R. CIV. P. 37.02. Monetary sanctions for discovery abuse should be directly related to the abuse and not excessive. *Burnette v. Sundeen*, 152 S.W.3d. 1, 4 (Tenn. Ct. App. 2004); *Mansfield v. Mansfield*, No. 01A019412CH0058, 1995 WL 643329, at *6 (Tenn. Ct. App. Nov. 3, 1995).

Here, Mr. Plofchan's failure to obey the discovery order caused the defendants and Ms. Byrd to incur further expenses. The court determined costs incurred based on billing records following Mr. Plofchan's first deposition, the point where he "first concealed the existence of messages with Ms. Byrd." And it determined that the defendants were entitled to $50,000.00 in attorney's fees and $5,986 in costs. This amount was less than the actual total fees incurred because the court "ha[d] already imposed the severe sanction of dismissal." The court also granted the defendants and Ms. Byrd an additional award of attorney's fees for the expenses they incurred opposing Mr. Plofchan's issuance of subpoenas after the case was dismissed.

These monetary sanctions were directly related to the discovery abuses and were not excessive under the circumstances. *See Burnette*, 152 S.W.3d at 4. In the operative complaint, Mr. Plofchan claimed that he was not intoxicated, aggressive, or violent when he was arrested. But the messages showed the exact opposite. Mr. Plofchan's deceit forced the defendants to pursue other avenues to obtain the messages and engage in duplicative discovery after the messages were finally turned over by Ms. Byrd. Then, after the trial court dismissed the case, Mr. Plofchan attempted to reopen discovery. This forced the defendants and Ms. Byrd to incur additional expenses. We discern no abuse of discretion.

Mr. Plofchan argues that even if monetary sanctions were appropriate, the defendants "provided no evidence to suggest that the fees charged [we]re reasonable" other than their counsel's "self-serving [a]ffidavit." But an affidavit or declaration is an

9

appropriate way to establish the reasonableness of attorney's fees. *See Coleman v. Coleman*, No. W2011-00585-COA-R3-CV, 2015 WL 479830, at *11 (Tenn. Ct. App. Feb. 4, 2015) (recognizing that "[t]ypically, . . . the party requesting attorney's fees produces an affidavit from the attorney who performed or supervised the work"). If a party wishes to challenge the reasonableness of the fees charged, it is incumbent on that party to request a hearing on the issue. *Kline v. Eyrich*, 69 S.W.3d 197, 210 (Tenn. 2002); *Moran v. Willensky*, 339 S.W.3d 651, 664 (Tenn. Ct. App. 2010). Here, Mr. Plofchan "indicated that oral argument [wa]s not necessary" for the court to decide this issue. So his argument that the fees were unreasonable is unavailing.

### III.

The trial court did not abuse its discretion in dismissing Mr. Plofchan's case and ordering him to pay attorney's fees and costs as a discovery sanction. So we affirm.

s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE