BOLLING, MCCOOL & TWIST, INC., Plaintiff–Appellant,

v.

ENTREMED, INC., Defendant–Appellee.

Nos. 99–5760, 99–5854.

United States Court of Appeals, Sixth Circuit.

Feb. 27, 2001.

Before MERRITT and GILMAN, Circuit Judges; BELL, District Judge.*

MERRITT, Circuit Judge.

Bolling, McCool & Twist, Inc., plaintiff in this diversity case, appeals the district court's decision limiting its damages based on defendant's breach of the parties' contingency fee, agency contract. The compensation provisions of the contract at issue in this case are ambiguous. The district court found that Bolling, McCool & Twist, as agent for its principal, defendant EntreMed, Inc, is entitled to a percentage of value that the principal received from certain strategic partnerships during the term of the parties' contract. Bolling, McCool & Twist, as agent, contends that its damages should be based on all of the value that its principal, EntreMed, receives from these partnerships, including value received after the termination of the parties' contract. In a cross-appeal, the principal challenges the district court's finding, based on a jury verdict, that it breached the parties' contract. We find no error in the jury verdict on liability, but we find that the plaintiff agent is entitled to damages based on a percentage of all value received by its principal, EntreMed, as a result of the agent's performance under the parties' contract. Based on the contract, we conclude that the agent is entitled to compensation based on any value received by the principal from partner-ships that result from the agent's activities on behalf of its principal that were initiated up to 18 months after the termination of the parties' contract.

## I. FACTS

The principal, EntreMed, is a company engaged in the development and the marketing of biotechnological products, including an anti-cholesterol agent that prevents and reverses atherosclerosis, an oncology agent that prevents drug resistance during chemotherapy, and an agent that limits blood supply to malignant tumors. The agent, Bolling, McCool & Twist, is a consulting firm, specializing in matters relating to the pharmaceutical industry. Hoping to position itself for a public stock offering, and to enter into strategic partnerships with larger pharmaceutical companies, the principal signed a contract with the agent on November 23, 1993. The parties' contract set forth a three-phase project, only the last of which is relevant to this lawsuit. Pursuant to the first two phases of the contract, the agent agreed to help the principal restructure its business plan and to provide the principal with various commercial analyses. Under Phase III, the plaintiff agent agreed to help the defendant principal enter into "arrangements"—i.e., strategic partnerships—with one or more large pharmaceutical companies. The agent's Phase III activities included preparing a presentation portfolio for its principal; identifying the principal's potential partners; developing the principal's strategy for negotiating with potential partners; and, in some circumstances, communicating with potential partners of the principal. The principal agreed to

* The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

compensate its agent for these activities according to a contingent fee formula.

Under this formula, the agent is entitled to compensation if 1) it succeeds in "facilitating, negotiating, or otherwise securing [a]rrangements," or if 2) the principal enters into a partnership, where "[c]ontact between EntreMed and TARGET(S) that leads to a such [sic] business arrangement between EntreMed and TARGET(S) shall have been initiated within 18 months of the termination of this Agreement...." If the work of the agent triggers a deal for the principal, the agent is entitled to compensation as follows:

> Five percent (5%) of the first $2.5 million dollars of valuation of whatsoeverkind, or any portion thereof, received by EntreMed as a result of any ARRANGEMENT(S) that arise from [the agent]'s activities, whether direct or indirect, on behalf of EntreMed for the term of this Agreement[.]

Under this formula, the agent is also entitled to 4% of the second $2.5 million of value received by the principal as a result of the agent's activities; 3% of the third $2.5 million; 2% of the fourth $2.5 million; and 1% of any value over $10 million. The contract provides that the principal will make payment to the agent "within 30 days of receipt of referenced monies or valuation of whatsoeverkind by EntreMed for the term of any agreement(s) between EntreMed and any TARGET(S)...."

In September 1994, the parties entered into a second contract. Reciting that Phases I & II of the first agreement had been completed, the second contract bound the agent to conduct more intensive efforts to secure partnerships under Phase III. The parties' reaffirmed the Phase III compensation formula, and the principal agreed to pay additional fees. Under the second contract, however, the agent's compensation under the formula is reduced by any amount already paid to the agent in fees.

On August 1, 1995, the principal sent a notice of termination to the agent. Termination became effective 90 days later, on November 1, 1995. After receiving the principal's notice of termination, the agent brought an action for breach of contract in Chancery Court of Washington County, Tennessee, claiming that the principal owed it certain fees and expenses. The principal removed the case to the district court on October 4, 1995. The case was bifurcated as to liability and damages. A jury found the principal, EntreMed, liable for breach of contract.

During the course of this litigation, the agent discovered that the principal had established a strategic partnership with a pharmaceutical company, Bristol–Myers Squibb. In the damages phase of the case, the agent sought payment of fees and expenses; it also sought a percentage share of any value received by the principal as a result of its partnership with Bristol–Myers Squibb. In a summary judgment, the district court granted the agent damages in the amount of fees and expenses. It rejected the agent's claim to damages based on the principal's partnership with Bristol–Myers Squibb, however, because the principal received no value from the partnership during the term of its contract with the agent. On appeal, the agent claims that the district court misinterpreted the compensation formula in the parties' contract. In its cross-appeal, the principal claims that the agent breached the parties' contract by failing to include a detailed accounting in its invoices to the principal. With regard to damages, the principal contends that the agent is not entitled to any compensation based on the principal's partnership with Bristol–Myers Squibb because the agent did not "facili-

tat[e], negotiat[e], or otherwise secur[e]" the partnership.

## II. ANALYSIS

In contract cases, Tennessee courts are directed to ascertain the intention of the contracting parties and to give effect to that intention. *See International Flight Center v. City of Murfreesboro,* 45 S.W.3d 565, 570–71 (6th Cir.2000); *Winfree v. Educators Credit Union,* 900 S.W.2d 285, 289 (Tenn.Ct.App.1995). Tennessee courts must enforce a contract according to its plain terms; they have no discretion to apply rules of construction when the language of a contract unambiguously reveals the intent of the parties. *See Koella v. McHargue,* 976 S.W.2d 658, 661 (Tenn.Ct. App.1998); *Warren v. Metropolitan Gov't of Nashville and Davidson County,* 955 S.W.2d 618, 622–23 (Tenn.Ct.App.1997). If the meaning of the terms of a contract is ambiguous, however, Tennessee courts should enforce the contract according to its purpose and "may consider the situation of the parties, the business to which the contract relates, the subject matter of the contract, the circumstances surrounding the transaction, and the construction placed on the contract by the parties in carrying out its terms." *See International Flight Center,* 45 S.W.3d at 570. A contract term is ambiguous "when it is of uncertain meaning and may fairly be understood in more ways than one...." *See Warren,* 955 S.W.2d at 623.

The primary dispute on appeal in this case concerns portions of the parties' compensation formula. That formula entitles the agent to scaled percentages "of valuation of whatsoeverkind, or any portion thereof, received by EntreMed as a result of any ARRANGEMENT(S) that arise from [the agent]'s activities, whether direct or indirect, on behalf of EntreMed for the term of this Agreement." The district

court determined that this language plainly and unambiguously limits the agent's compensation to a portion of any value actually received by the principal before the termination of the parties' contract. It read the above-quoted language as saying that the agent is entitled to a percentage "of valuation of whatsoeverkind ... received by EntreMed ... for the term of [i.e., during] this Agreement."

The district court's interpretation of the compensation formula conflicts with two other provisions in the parties' contract. The first of these provides that the principal must remit payment to the agent "within 30 days of receipt of referenced monies or valuation of whatsoeverkind by EntreMed *for the term of any agreement(s) between EntreMed and any TARGET(S)* ...." (Emphasis added). The terms of this payment-due provision suggest that the agent's compensation will continue for the life of any agreements between the principal and its strategic partners. The district court found the terms of this provision and those of the compensation formula mutually repugnant. The court decided that the compensation formula is limited to value received during the term of the agreement between the agent and the principal, and it disregarded the payment-due provision to the extent that the provision suggested otherwise.

Second, a conflict exists between the district court's interpretation of the parties' compensation formula and a provision entitling the agent to compensation if the principal itself initiates contact with a target pharmaceutical company "within 18 months of the termination of this Agreement ...," and if that contact leads to the formation of a partnership. The court noted that this provision appears to entitle the agent to compensation based on value received by the principal after the termination of the parties' contracts. It found,

however, that the 18–month limitation in the provision refers to the 18–month period *before* the termination of the parties' contracts, not 18 months afterward. According to this interpretation, the agent is entitled to compensation if the principal independently makes contacts leading to a strategic partnership during the 18 months before termination of the parties' contract.

We find that, taken alone, the language of the compensation formula is not plain and unambiguous. As noted above, the principal agreed to pay the agent percentages "of valuation of whatsoeverkind ... received by EntreMed as a result of any ARRANGEMENT(S) that arise from [the agent]'s activities ... on behalf of EntreMed for the term of this Agreement." This sentence is susceptible to two meanings. The phrase "for the term of this Agreement" might refer to the agent's "activities;" it might also qualify "received by EntreMed." Considering basic rules of grammar, the subject matter of the contract, and surrounding provisions of the contract, however, we find that the parties intended that the agent be entitled to compensation based on all value received by the principal as a result of the agent's performance under the contract.

As a matter of grammatical construction, the phrase "for the term of this Agreement" in the compensation formula more likely refers to "activities" than to "received by EntreMed." The district court's interpretation of the language of the formula would be more plausible if the phrases "on behalf of EnterMed" and "for the term of this Agreement" were separated by a comma. Because they are not so separated, they are best read together, and together they qualify the "activities" of the agent that give rise to compensation.

This interpretation of the compensation formula is supported by consideration of a number of other provisions in the parties' contracts—especially the payment-due provision and the 18–month provision. As the district court recognized, the payment-due provision refers on its face to the term of the principal's strategic partnerships, not to the term of the principal's contract with the agent. The provision thus reflects that the agent is entitled to payments coming due after the termination date of the parties' contract.

Similarly, our interpretation of the compensation formula is logically consistent with the provision in the parties' contract that entitles the agent to receive compensation based on the value that the principal receives from certain partnerships initiated "within 18 months" of the termination of the parties' contracts. The meaning of "within" is not limited to "before," as the district court found. According to Webster's dictionary, it means, *inter alia*, "not longer in time than." Webster's Third New International Dictionary 2627 (1963). As the term is used in the parties' contract, it appears to mean that the agent is entitled to compensation if the principal forms a partnership up to 18 months after the termination of the contract with one or more of the specific targets identified by the agent. This provision is thus apparently designed to prevent the principal from waiting until the termination of its contract with the agent to negotiate a partnership and thereby avoiding an obligation to compensate the agent for contracts the agent had some role in procuring.

The parties' contract also provides that, upon termination, the agent will "retain its rights with respect to Phase III ... with respect to ARRANGEMENT(S) between EntreMed and TARGET(S)." Although the contract does not specify what "rights with respect to Phase III" the agent will retain, this provision suggests that the agent is entitled to compensation based on

value received by the principal after the termination of the parties' contract.

Finally, the situation of the parties and the subject matter of the contract supports this interpretation of the parties' compensation formula. The formula operates like a contingency fee; the agent triggers its right to compensation if it helps the principal develop a partnership with one or more target pharmaceutical companies. Under such an arrangement, there may be a delay between the agent's performance and the occasion for its compensation. Although the parties did a poor job drafting the precise terms of their arrangement, we find that they intended that the agent should be entitled to compensation based on value received by the principal after the termination of the parties' contract when the agent had some role in bringing about the contract, but not if the agent had no role in bringing about the contract. This is a factual question.

The principal claims in the alternative that, however we construe the compensation formula, the agent did not, as a factual matter, trigger the compensation formula by "facilitating, negotiating, or otherwise securing" the principal's strategic partnership with Bristol–Myers Squibb. The district court seems to have found that the agent is entitled to damages as compensation based on any value the principal received from Bristol–Myers Squibb before the termination of the parties' contracts, but not based on value received thereafter. The district court did not make sufficient findings of fact on this issue, and there is not enough evidence in the record relating to the development of the principal's relationship with Bristol–Myers Squibb to enable us to determine whether or not the agent did help procure this contract. The agent should be entitled to compensation under its fee arrangement for the value of any contract or partnership that the principal entered into up to 18 months after the expiration of the parties' contract if the agent had a role in procuring the contract or partnership.

On cross-appeal, the principal claims that the agent itself breached the parties' contract. This claim fails on its merits. The principal argues that the agent did not comply with a provision of the parties' contract requiring it to submit certain details supporting its invoices for fees. In its brief, the principal does refer to evidence that the agent failed to provide such details. The principal has not shown, however, that such a failure amounts to a material breach of the parties' contract.

## III. CONCLUSION

For the foregoing reasons, we reverse the district court's order granting the principal's motion for summary judgment with respect to the determination of damages, and we remand for a trial on damages. We remand with instructions to try the issue of whether or not the agent is entitled to compensation based on the principal's partnership with Bristol–Myers Squibb, or compensation based on its having procured any other partnership. We affirm the judgment of the district court incorporating the jury's verdict that the principal, EntreMed, breached its contract with the agent, plaintiff Bolling, McCool & Twist.