IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 5, 2024 Session

**AMY LEANNE WILHITE v. SETH EVAN WILHITE**

**Appeal from the Circuit Court for Sumner County**
**No. 2020-CV-814      Joe H. Thompson, Judge**

————————————————————

**No. M2023-00188-COA-R3-CV**

————————————————————

This post-divorce action concerns the distribution of proceeds from the sale of the parties' former marital residence as specified in their marital dissolution agreement. The husband claimed a right under the MDA to, inter alia, one-half of the net proceeds, but the wife asserted that the MDA limited the husband's equity interest to $40,000. The parties also disputed who was liable for income taxes, including interest and penalties, incurred and accruing after 2019, when the parties entered the MDA. Each party also asserted claims and entitlements to various credits and/or offsets resulting from the delay in the sale of the marital residence. The trial court held that the MDA limited the husband's interest to $40,000. The court assessed $29,368.52 in post-divorce income taxes, including penalties and interest, against the husband. The court also ordered him to pay $20,543.10 for the wife's attorney's fees per the MDA's fee-shifting provision. But the court granted the husband's request for reimbursement for the cost of repairs to the property and awarded the husband credit for one-half of the utilities that he paid pending the sale of the property. The husband appeals, raising several issues. We respectfully disagree with the trial court's finding that the MDA limited the husband's equity interest to $40,000. We also conclude that the MDA obligated Husband to pay for all utilities and other expenses pending the sale of the property. For this reason, we reverse the trial court's finding that Husband was entitled to a credit of one–half of those payments. Thus, we vacate the monetary awards that were based, in part, on these decisions, and remand with instructions to recalculate the parties' respective entitlements to "the net proceeds." We affirm the trial court in all other respects. We also find that the wife has a right to recover her reasonable and necessary attorney's fees and expenses incurred on appeal under § 15 of the MDA and remand with instructions for the trial court to make the appropriate award.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part, Reversed in Part, Vacated in Part, and Remanded**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court, in which W. NEAL MCBRAYER and ARNOLD B. GOLDIN, JJ., joined.

Heather G. Parker, Murfreesboro, Tennessee, for the appellant, Seth Evan Wilhite.

Lindsey A. Ralston and M. Allen Ehmling, Gallatin, Nashville, Tennessee, for the appellee, Amy Leanne Wilhite.

## OPINION

### FACTS AND PROCEDURAL HISTORY

In April 2021, Amy Leanne Wilhite ("Wife") and Seth Evan Wilhite ("Husband") executed a marital dissolution agreement ("the MDA").

Section 4 of the MDA—which is not a model of clarity—provided in relevant part as follows:

> The parties acknowledge that the Husband's interest in the equity in the said real property is in the amount of $40,000.00. It is agreed that the Wife shall pay to the Husband the sum of $40,000.00 for his equity in said real property upon the sale of the marital home. It is agreed by and between the parties that the Husband shall quitclaim to the Wife his interest in the said real property. The Husband agrees that his interest in the said property shall be divested from him and reinvested in the Wife so that the Wife shall own the said property free and clear of any interest or claim of the Husband.
>
> It is further agreed that the Wife shall be solely responsible for the encumbrance on the aforesaid real property, and that she shall indemnify and hold the Husband harmless therefrom. The Wife has made application and been approved to refinance the home which is expected to close on or before May 15, 2021.
>
> From Wife's refinance of the marital home, the following expenses will be paid:
>
>> a. All current liens on the home.
>>
>> b. All federal income tax liabilities, joint and individual, for the years 2013 [through] 2019, not to exceed $90,900.
>>
>> c. $17,000 for the Xterra automobile driven by Jack.
>>
>> d. All closing costs associated with re-finance up to $3.760– see attached from F&M Bank.

e. $11,000 paid toward the balance on the Wife's automobile Volkswagen EOS.

f. $21,000 toward the wife's credit card indebtedness.

g. $7,000.00 to Wife for repairs needed to the home.

h. All remaining cash equity from the refinance shall be divided equally between the parties.

Pending the Wife's refinance, the Husband shall be responsible for the payment of the house note and utilities as per the parties' prior customs and practices.

In the event the Wife is unable to qualify for the refinance of the marital home, the marital home shall be listed and sold and the foregoing expenses (a through h) shall be paid from the net proceeds with the balance divided equally.

After the trial court entered its Final Decree of Divorce, and as Wife pursued her efforts to refinance the Property, Wife learned that her application was stalled because Husband had entered into a forbearance agreement shortly before executing the MDA.[1] Although the MDA obligated Husband to pay the mortgage until the home was refinanced or sold, the forbearance agreement allowed Husband to withhold payments for several months. Wife learned of the forbearance agreement from Brian Maggart of F&M Bank, who was handling her refinancing application.

Then, on August 16, 2021, Husband filed a petition to sell the marital home and interpleaded $6,443.70 into the court, representing three mortgage payments. On October 29, 2021, Wife responded to Husband's petition and filed a counter-petition for breach of contract and civil contempt. Wife sought, *inter alia*, to enforce § 4 of the MDA.

Two months later, Wife filed a motion regarding the refinancing of the marital home and funds held in clerk's office. The trial court held a hearing on Wife's motion on November 15, 2021. In an order entered on November 23, 2021, the court ordered Husband to help with Wife's efforts to obtain a new loan.

---

[1] "The terms 'loan' and 'forbearance' are correlative. Permitting one to retain a loan of money after it has become due and payable is *forbearing* it. That is, *forbearance*, within the meaning of usury laws, is the giving of further time for the return of payment of money after the date upon which it became due." FORBEARANCE, Black's Law Dictionary (12th ed. 2024) (quoting James Avery Webb, *A Treatise on the Law of Usury* 18 (1899)).

On February 11, 2022, Wife moved again to compel Husband to, *inter alia*, cooperate with the existing lender to enable Wife to complete her application. This resulted in another order that again required Husband to cooperate with Wife's efforts to refinance the existing loan to enable her to buy the Property.

Meanwhile, neither party paid the outstanding income tax debt—which was to be paid from the proceeds of the sale of the Property. Thus, the tax debt, including interest and penalties, increased and the IRS placed tax liens on the Property that totaled over $120,000—an amount significantly larger than the $90,900 that the parties contemplated in the MDA.

On May 25, 2022, Husband filed a Motion to Order Sale of the Marital Residence. Thereafter, per an agreed order entered on June 23, 2022, the parties listed the Property for sale, and it sold soon after. At closing, the parties paid off the tax lien, the mortgage, and the other expenses listed in the MDA, leaving a balance of $211,756.04.

Thereafter, each party asserted competing claims to the remaining funds based on differing interpretations of the MDA. Husband argued that the funds were "net proceeds" from the sale and should be "divided equally" under subparagraph (h) of the MDA. Husband also claimed that the MDA entitled him to reimbursement for certain repairs he made to the residence and for utilities and other expenses Husband paid between the first expected closing date in May 2021 and the sale of the residence.

But Wife maintained that Husband's share was limited to $40,000. Wife also claimed that Husband should be liable for, *inter alia*, the additional taxes, penalties, and interest incurred due to delays caused by Husband. She also sought to recover the attorney's fees she had incurred in her efforts to enforce the MDA as provided for in § 15 of that agreement.

The trial court held a hearing on the parties' claims on January 18, 2023. The court heard testimony from both parties along with Brian Maggart of F&M Bank, who helped Wife with her efforts to refinance the Property.

Mr. Maggart explained that, as the May 2021 closing date approached, he could not obtain a payoff amount from the existing lender because the existing loan was in only Husband's name, and Husband had not authorized Mr. Maggart to obtain this information. Then, once Husband provided the authorizations, Mr. Maggart learned that Husband had executed a forbearance agreement that prevented the refinance until Husband paid the arrearage.

In its Final Order, the trial court found that the MDA limited Husband's equity in the Property to $40,000. The court also credited $11,000 to Husband for repairs and "one-half of the utilities and other expenses Husband paid between [the first anticipated closing date on] May 15, 2021, and the time the marital home sold." As for the proceeds paid to

- 4 -

the IRS for the parties' "joint and separate" tax debts, the trial court found that Husband was responsible for $29,368.52. The court also ordered Husband to pay Wife her reasonable attorney's fees in the amount of $20,543.10 per § 15 of the MDA.

In its Final Order, the trial court reasoned as follows with regard to the division of proceeds:

> In every contract in Tennessee, there is an implied common law duty of good faith; and the Court finds that Mr. Wilhite did not act in good faith when he unilaterally placed the mortgage into forbearance status in December of 2020, while the parties' divorce was pending, as the forbearance prevented Ms. Wilhite from completing the refinance, at no fault of her own.
>
> Due to the forbearance, the home ultimately had to be sold, and, per the terms of the MDA, when the home sold, Husband would receive $40,000 for his equity in the home. The Court finds that, upon review of the MDA, the contract, it was the intention of the parties that Husband would receive the $40,000 upon the sale of the home at some point in the future. At some point after the MDA was entered into, and before the home was sold, multiple tax liens were placed on the home by the IRS in the amount of $120,644.49, which is $30,644.49 over and above the $90,000 contemplated by Provision 4 of the parties' MDA. The Court finds that there were no [IRS] liens on the home at the time the parties entered into the MDA.
>
> .    .    .
>
> The Court finds that Husband's equity in the home, per the Marital Dissolution Agreement, is $40,000; and the remaining equity/proceeds from the sale of the marital home are awarded to Wife.
>
> The Court further finds that Husband is owed a credit in the amount of $6,572.22 for repairs he made to the home after May 15, 2021; as well as a credit in the amount of $5,213.63, which represents one-half of the utilities and other expenses husband paid between May 15, 2021, and the time the marital home sold.
>
> This equates to a total credit to Husband in the amount of $51,785.85, from which the following shall be deducted: Husband's IRS debt paid at the closing as the result of the tax liens in the amount of $29,368.52 [and] Wife's refinance expenses for appraisals, rate locks, etc. in the amount of $1,075, leaving a total amount owed to Husband in the amount of $21,342.33.

The trial court also granted Wife's request for an award of her attorney's fees, reasoning as follows:

The parties MDA, Section 15, on page 7, provides:

> It is agreed by and between the parties that in the event it becomes reasonably necessary for either party to institute legal proceedings to procure the enforcement of any provision of this Agreement, and if successful, he or she shall also be entitled to a judgment for reasonable expenses including attorney fees incurred in prosecuting the action.

The Court finds that Section 15 of the MDA is binding on the parties and that Counter-Petitioner/Wife is entitled to her reasonable attorney fees and expenses in this cause due to the fact that it was necessary for her to institute legal proceedings to procure enforcement of the MDA.

Based on these facts and findings, the trial court awarded Wife $190,413.71 from the proceeds and awarded Husband $21,342.33. The court also found Wife's reasonable attorney's fees and costs amount to $20,543.10 and ordered this amount to be paid from Husband's portion of the proceeds.

This appeal by Husband followed.

## ISSUES

Husband presents several issues for our consideration, which we have restated in part for clarity:

1. Whether the evidence preponderates against the trial court's finding that Husband did not act in good faith.

2. Whether the trial court erred in interpreting the parties' MDA in its order dividing the net proceeds from the sale of the Marital Residence.

3. Whether the trial court erred in holding Husband solely responsible for the increase in the tax debt that accrued after the May 2021 anticipated closing date.

4. Whether the trial court erred in reducing Husband's request for reimbursement for the utilities and other expenses by half.

5. Whether the trial court erred in awarding attorney's fees to Wife and in denying Husband's request for attorney's fees.

6. Whether Husband should be awarded his attorney's fees at trial and on appeal pursuant to the MDA.

- 6 -

Wife does not present any additional issues, but she asks for an award for her appellate attorney's fees.

## STANDARD OF REVIEW

"In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01. If the trial court makes the required findings of fact, "appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise." *Kelly v. Kelly*, 445 S.W.3d 685, 691–92 (Tenn. 2014). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Grp. Tr.*, 209 S.W.3d 595, 599 (Tenn. Ct. App. 2006) (citations omitted).

The rationale underlying Rule 52.01 is that findings of fact help with appellate review by "affording a reviewing court a clear understanding of the basis of a trial court's decision" and enhances the authority of the trial court's decision." *Gooding v. Gooding*, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015) (quoting *In re Est. of Oakley*, No. M2014-00341-COA-R3-CV, 2015 WL 572747, at *10 (Tenn. Ct. App. Feb. 10, 2015). Without findings of fact and conclusions of law, "this court is left to wonder on what basis the court reached its ultimate decision." *Id.*

"A marital dissolution agreement 'is a contract and thus is generally subject to the rules governing construction of contracts.'" *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006) (quoting *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001)). "Because 'the interpretation of a contract is a matter of law, our review is de novo on the record with no presumption of correctness in the trial court's conclusions of law.'" *Id.* (quoting *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561 (Tenn. Ct. App. 2003)).

Generally, an attorney fee award is reviewed under an abuse of discretion standard. *See Eberbach v. Eberbach*, 535 S.W.3d 467, 479 n.7 (Tenn. 2017) (citations omitted). But when the award was based in contract, we review the matter de novo. *See id.*

## ANALYSIS

### I.

Husband's first issue is whether the evidence preponderates against the trial court's finding that he did not act in good faith.

As an enforceable contract, an MDA "contains an implied covenant of good faith and fair dealing both in the performance and in the interpretation of the contract." *Long v. McAllister-Long*, 221 S.W.3d 1, 9 (Tenn. Ct. App. 2006) (citation omitted). A covenant of good faith protects the parties' reasonable expectations and their right to benefit from their

agreement. *Lopez v. Taylor*, 195 S.W.3d 627, 633 (Tenn. Ct. App. 2005) (citation omitted). Furthermore, the duty of good faith "requires a contracting party to do nothing that will have the effect of impairing or destroying the rights of the other party to receive the benefits of the contract." *Elliott v. Elliott*, 149 S.W.3d 77, 85 (Tenn. Ct. App. 2004) (citing *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995)), *abrogated on other grounds by Eberbach v. Eberbach*, 535 S.W.3d 467 (Tenn. 2017).

Here, the MDA unequivocally states, "Pending the Wife's refinance, the Husband shall be responsible for the payment of the house note and utilities as per the parties' prior customs and practices." Husband agreed to this unambiguous provision without disclosing that he had already executed a forbearance agreement with the mortgage company that allowed him to withhold the payments. This conduct reflects a lack of good faith. Moreover, the forbearance agreement did not prevent Husband from paying the house note; it merely afforded him the option of not doing so without being in default on the mortgage. Yet, after the MDA went into effect—and although Wife asked for Husband to remit the mortgage payments to allow her to refinance the mortgage—Husband did not do so. Thus, once the MDA went into effect and while Husband had the affirmative duty to remit such payments, Husband voluntarily chose to not pay the mortgage as he was obligated to do. Notably, Husband presented no evidence to show why he could not fulfill his obligation.

The record also reveals that Husband had an ulterior motive for not remitting the mortgage payments, that being his desire to force Wife to sell the Property, in which case he believed he would receive half of the net proceeds rather than the originally agreed-upon $40,000.[2] This is clear from his actions and his frequent requests to sell the Property shortly after entering into the MDA. Specifically, as Wife testified, when she learned of the forbearance agreement, and after speaking with Mr. Maggart to figure out what needed to be done, Wife informed Husband of the steps necessary to take the existing loan out of forbearance. But rather than following the letter and spirit of the MDA, Husband took no affirmative action other than to repeatedly urge Wife to sell the Property. As Wife explained, Husband informed Wife that, because of the recent changes in the real estate market, they would make more money by selling the home.

Thus, despite several court orders instructing Husband to take the mortgage out of forbearance and to cooperate with the refinance process, Husband did not do so in a meaningful manner. And the evidence shows that Husband was motivated by the belief that he would financially benefit if he could force the sale of the Property. This shows a lack of good faith. *See Elliott*, 149 S.W.3d at 85 (stating that the duty of good faith "requires

---

[2] Husband relied on the following provision in believing he would receive a greater sum if the Property was sold: "In the event the Wife is unable to qualify for the refinance of the marital home, the marital home shall be listed and sold and the foregoing expenses (a through h) shall be paid from the net proceeds with the balance divided equally."

a contracting party to do nothing that will have the effect of impairing or destroying the rights of the other party to receive the benefits of the contract." (citing *Winfree*, 900 S.W.2d at 289)).

The evidence therefore does not preponderate against the trial court's finding that Husband did not act in good faith in fulfilling his duties under the MDA.

## II.

Husband's second issue reads: "Whether the trial court erred in interpreting the MDA in its order dividing the net proceeds from the sale of the Marital Residence." More specifically, Husband contends that the trial court erred by limiting his interest in the proceeds to $40,000:

> In this case, the MDA was not ambiguous. The MDA essentially had two sections regarding the real property, the first if Wife refinanced the mortgage and the second if the home was sold. This is the only way to interpret provision four's paragraphs as being harmonious with each other. However, instead of this approach, it appears the trial court looked only at [the first section] as being the final and only word on [Husband's] share of the net proceeds from the sale of the home after [Wife's] attempts at refinancing were ultimately unsuccessful. It would not make sense that [Husband] would get $40,000 regardless of whether the home was sold or refinanced, but then also have a provision that he gets one half of the net equity upon the sale.

As noted earlier, "[a] marital dissolution agreement 'is a contract and thus is generally subject to the rules governing construction of contracts.'" *Barnes*, 193 S.W.3d at 498 (quoting *Johnson*, 37 S.W.3d at 896). When construing a contract, we apply well-established rules of interpretation and construction:

> The cardinal rule in the construction of contracts is to ascertain the intent of the parties. If the contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms. The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. Courts cannot make contracts for parties but can only enforce the contract which the parties themselves have made.

*Pitt v. Tyree Org. Ltd.*, 90 S.W.3d 244, 252 (Tenn. Ct. App. 2002) (citations omitted).

Further, "in the absence of fraud or mistake, a contract must be interpreted and enforced as written, even though it contains terms which may be thought harsh and unjust." *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561–62 (Tenn. Ct. App. 2003) (quoting *Heyer-Jordan & Assocs., Inc. v. Jordan*, 801 S.W.2d 814, 821 (Tenn. Ct. App. 1990)). When doing so, "**[a]ll provisions in the contract should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract**." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999) (emphasis added). Accordingly, "[e]ach provision of an MDA should be construed in light of the entire MDA, and the language in these provisions should be given its natural and ordinary meaning." *Elliott*, 149 S.W.3d at 84.

The MDA is not a model of clarity and has provisions that seem to be inconsistent; still, we conclude that these provisions can be construed "in harmony" with each other. *See Guiliano*, 995 S.W.2d at 95.

It is undisputed that the MDA gave Wife the right to buy Husband's interest in the Property provided she obtained financing sufficient to pay the financial obligations in the MDA and to purchase Husband's equity interest. In fact, the MDA identifies the closing date, stating, "The Wife has made application and been approved to refinance the home which is expected to close on or before May 15, 2021." The MDA also provides, "Pending the Wife's refinance, the Husband shall be responsible for the payment of the house note and utilities as per the parties' prior customs and practices." Further, the MDA specified the purchase price for Husband's equity in the Property "upon the sale of the marital home" to Wife:

> It is agreed that the Wife shall pay to the Husband the sum of $40,000.00 for his equity in said real property **upon the sale of the marital home**. It is agreed by and between the parties that the Husband shall quitclaim to the Wife his interest in the said real property. The Husband agrees that his interest in the said property shall be divested from him and reinvested in the Wife so that the Wife shall own the said property free and clear of any interest or claim of the Husband.

(Emphasis added).

The MDA also contemplates the possibility that Wife would not obtain the financing to complete the purchase in which event the parties were to list the Property for sale on the open market. This is unequivocally stated in the last paragraph in the MDA, which reads: "In the event the Wife is unable to qualify for the refinance of the marital home, the marital home shall be listed and sold and the foregoing expenses (a through h) shall be paid from the net proceeds with the balance divided equally."

Having considered each provision in light of the entire MDA, we find that the parties agreed that Husband would sell and quitclaim his interest in the Property to Wife in

consideration for $40,000 if Wife refinanced the mortgage. But Wife was unable to refinance the Property, and it was sold to a third party. Therefore, this dispute is controlled by the last paragraph of the MDA, which states, "In the event the Wife is unable to qualify for the refinance of the marital home, **the marital home shall be listed and sold and the foregoing expenses (a through h) shall be paid from the net proceeds with the balance divided equally**." (Emphasis added).

For these reasons, we respectfully disagree with the trial court's ruling that "it was the intention of the parties that Husband would receive the $40,000 upon the sale of the home." Accordingly, we reverse and modify that decision as stated above. We also vacate the monetary awards that were based, in part, on that decision and remand with instructions for the trial court to recalculate the parties' respective entitlements to "the net proceeds" subject to the various offsets and allocations or charges and credits as affirmed or modified in this decision.

III.

Husband's third issue reads: "Whether the trial court erred in holding Husband solely responsible for the increase in the tax debt that accrued after the May 2021 anticipated closing date." Husband's argument is based on the fact that Wife benefitted from the delays in the sale of the Property. As he states in his brief, "If she was to share in the unanticipated increase in value of the home, she should have shared in the unanticipated increase in the tax debt, which resulted in a lien on the marital residence."[3] Significantly, Husband does not challenge the trial court's findings concerning which party incurred the additional tax liability that accrued after they entered the MDA.

The MDA states in paragraph 4(b) that "[a]ll federal income tax liabilities, **joint and individual**, for the years 2013 thru 2019, **not to exceed $90,000**" (emphasis added) shall be paid at closing from the net proceeds. While the MDA did not expressly provide for additional tax liabilities, paragraph 6 of the MDA states that "each party shall be solely responsible for any other debts that they have acquired in their respective names and not

---

[3] The essence of Husband's argument on this issue as stated in his brief reads:

[Wife] wholly avoided the negative consequences of the passage of the same time period, which specifically included the significant increase in the parties' tax debt from $90,000 to $120,644.49. Again, this reading of the requirements of the parties' MDA would make it unconscionable. In order to achieve this result, the trial court essentially reformed the contract, or rescinded parts of it, to fit the facts regarding the split of equity, but failed to similarly modify the division of debt as set forth in the MDA. If she was to share in the unanticipated increase in value of the home, she should have shared in the unanticipated increase in the tax debt, which resulted in a lien on the marital residence.

set forth specifically herein, and that they shall each indemnify and hold the other harmless thereon."

The proof introduced by Wife established that Husband accrued additional tax debt after the MDA was entered, specifically $6,459.89 in the tax year 2020 and $3,565.61 in the tax year 2021, while Wife only accrued individual tax debt of $1,275.97 in the tax year 2020 and none in 2021. Wife also proved that the remaining tax debt, in the form of interest and penalties, accrued due to the delay in closing, which the trial court found to be the result of Husband's lack of good faith in fulfilling his responsibilities under the MDA.

At the final hearing in 2022, the trial court found that the total of tax liens placed on the Property was $120,644.49, which was $30,644.49 more than the $90,000 tax limit set forth in the MDA. The court further found in its final order that $1,275.97 of this increase was Wife's liability and $29,368.52 was Husband's liability, the bulk of which being interest and penalties that accrued due to the delays caused by Husband's acts and omissions. Having reviewed the record, we find that the evidence does not preponderate against these findings. Moreover, Husband failed to present an argument to challenge the trial court's findings of fact on this issue, which constitutes a waiver of this issue. *See Forbess v. Forbess*, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011) (citing *Newcomb v. Kohler Co.,* 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (failure "to cite to any authority or to construct an argument regarding [a] position on appeal" constitutes a waiver of the issue).

We also note that Husband's entire argument concerning this issue was based on the alleged inequity of Wife receiving the benefit of the increase in value of the property while avoiding the negative consequences of accrued interest and penalties due to the passage of time. This argument was based on the trial court's ruling that capped Husband's "equity interest" in the Property at $40,000. Because we have reversed that decision and ruled that Husband is entitled to one-half of the net proceeds resulting from the sale of the Property,[4] Husband's "equitable" argument concerning this issue no longer has a factual or equitable foundation. Thus, we find the argument unavailing.

Accordingly, we affirm the trial court's allocation of the tax liability.

IV.

Husband's fourth issue is "Whether the trial court erred in reducing Husband's request for reimbursement for the utilities and other expenses by half."

Husband asked the trial court to award him a credit of $10,427.26 for all of the payments he made for the utilities at the house, which included the internet, water, power,

---

[4] Husband's share of "the net proceeds" is subject to the various offsets and allocations or charges and credits as affirmed or modified in this decision.

and gas bills from June 2021 through the date of the sale of the house in August 2022. Husband argued that he should not be responsible for these costs because he moved out of the home before the first attempted closing in May 2021 and Wife was the only party to benefit from these services. Wife argued that he was obligated to remit all of the payments pursuant to the MDA.

The trial court gave Husband credit for one-half of the expenses that he paid after the expected closing in May 2021 through the sale of the house, which totaled $5,213.63. On appeal, Husband contends that this award was insufficient, while Wife contends that the trial court was not obligated to return any monies paid by Husband.

The MDA states in pertinent part, "Pending the Wife's refinance, the Husband shall be responsible for the payment of the house note and utilities as per the parties' prior customs and practices." Thus, the parties unequivocally agreed that Husband would continue paying the utilities and expenses of the home—regardless of who was living there. Although Wife was unable to refinance the mortgage, her failure to do so was due in principal part to Husband's lack of good faith, as found by the trial court. Furthermore, although the MDA stated that Husband would pay "[p]ending Wife's refinance," the context in which that language appears evinces an intent for Husband to pay the expenses until the home was sold, whether it be to Wife or to a third party.

For these reasons, we respectfully disagree with the trial court's decision to award Husband a credit in the amount of $5,213.63. Therefore, we reverse this decision and hold that Husband is not entitled to any credit for the payments he remitted for utilities and related expenses pending the sale of the Property. On remand, the trial court shall take this modification into consideration when calculating the parties' respective entitlements to the net proceeds from the sale of the property.

V.

Husband's fifth issue reads, "Whether the trial court erred in awarding attorney's fees to Wife and in denying Husband's request for attorney's fees."

The award of attorney's fees was based on the MDA, which is a contract. Therefore, we review the award under the rules of contract law. *See Eberbach*, 535 S.W.3d at 478. Accordingly, we are bound by the terms of the MDA regarding an award of attorney's fees and have no discretion in the matter. *See id.*

Section 15 of the MDA contains a fee-shifting provision, which states:

It is agreed by and between the parties that in the event it becomes reasonably necessary for either party to institute legal proceedings to procure enforcement of any provision of this Agreement, and if successful, he or she

- 13 -

**shall** also be entitled to a judgment for reasonable expenses including attorney's fees incurred in prosecuting the action.

As the trial court correctly noted in its Final Order, this language is binding on the parties. And it is readily apparent that Wife had to institute this action to force Husband to comply with the MDA, and the trial court entered several orders compelling Husband to do just that, comply with the MDA. While Wife did not prevail on every issue, she was clearly the prevailing party in principal part. Thus, as the MDA mandates, she has a right to recover her reasonable and necessary attorney's fees in doing so.

For these reasons, we affirm the court's award of attorney's fees to Wife.

## VI.

Wife seeks to recover her attorney's fees and costs incurred in this appeal. As noted above, § 15 of the MDA entitles the successful party in an enforcement proceeding "to a judgment for reasonable expenses including attorney's fees incurred in prosecuting the action."

As stated, the trial court found that it was necessary for Wife to institute this action to enforce the MDA, and we have affirmed that decision. Further, because Husband appealed the trial court's decision on the enforcement of the MDA, it was necessary for Wife to engage counsel to file a brief and to defend the trial court's decisions. Although we have reversed one of those decisions—that pertaining to Husband's equity interest in the Property—we have also affirmed the court in all other respects. Accordingly, as § 15 mandates, Wife has a right to recover her attorney's fees and expenses incurred in this appeal.

Accordingly, on remand, the trial court shall determine Wife's reasonable and necessary attorney's fees and expenses incurred on appeal and enter judgment accordingly.

## CONCLUSION

For all these reasons, we affirm the trial court in part, reverse and vacate in part, and remand the case for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellant, Seth Evan Wilhite.

_____

FRANK G. CLEMENT JR., P.J., M.S.